Marcia HAMPTON, Individually, and as Representative of the Estate of Jerry D. Hampton, Deceased, and as Next Friend of Lauren Hampton, a Minor, and Jil Hampton, Appellants,

v.

UNIVERSITY OF TEXAS—M.D. ANDERSON CANCER CENTER, Appellee.

No. 01–98–00923–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 23, 1999.

Rehearing Overruled Dec. 3, 1999.

William M. Briscoe, Houston, for Appellant.

John H. Ferguson, John Cornyn, Austin, for Appellee.

Panel consists of Justices TAFT, NUCHIA, and EVANS.*

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

FRANK G. EVANS, Justice (Retired).

This is an appeal from the trial court's order granting a plea to the jurisdiction based on sovereign immunity. We reverse the trial court's order and remand the cause.

### Nature of the Case

Marcia Hampton, individually, and as representative of the estate of Jerry D. Hampton, deceased, and as next friend of Lauren Hampton, a minor, and Jil Hampton ("the Hamptons") sued the University of Texas—M.D. Anderson Cancer Center ("the hospital") alleging a medical malpractice claim arising from the decedent's fall from a hospital bed after surgery.

### Sovereign Immunity and Waiver

The hospital is a governmental unit generally immune from tort liability. The sole issue in this case is whether the Hamptons have alleged a cause of action that falls within the immunity waiver provisions of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–101.109 (Vernon 1997 & Supp. 1999). The Hamptons contend that the Texas legislature waived sovereign immunity in section 101.021(2) of the Texas Tort Claims Act, which provides:

A governmental unit in the state is liable for:

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. REM.CODE ANN. § 101.021(2) (Vernon 1997).

## Jurisdictional Review

■ If a cause of action is barred by sovereign immunity, the trial court lacks subject matter jurisdiction. *City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 752 (Tex.App.—Austin 1998, no pet.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.1999). Under such circumstances, the trial court should dismiss the cause with prejudice. *Id.*

■ In considering a plea to the jurisdiction the trial court must look solely to the allegations in the plaintiff's petition. *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied). Similarly, on appeal from an order granting a plea to the jurisdiction, the appellate court will consider the issue *de novo*, basing its decision solely on the allegations in the plaintiff's petition. *L.S. Ranch, Ltd.*, 970 S.W.2d at 753; *Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys.*, 909 S.W.2d 540, 542 (Tex.App.—Austin 1995, writ denied).

■ It is the plaintiff's burden to allege facts affirmatively showing that the trial court has subject matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *L.S. Ranch, Ltd.*, 970 S.W.2d at 753. However, the reviewing court must accept the allegations of the plaintiff's petition as true and construe those allegations in the plaintiff's favor. *Id.*

## The Plaintiffs' Petition

In their second amended petition, the Hamptons allege that on October 17, 1995, the deceased, Jerry D. Hampton, underwent surgery for abdominal and rectal cancer while staying at the hospital. Three days later, on October 20, 1995, Mr. Hampton fell from his hospital bed and was found by Mrs. Hampton lying on the floor and bleeding significantly.

The Hamptons further allege:
[Mr. Hampton's] medical condition and the high doses of medication required and placed a duty on [the hospital] to provide proper supervision and a proper environment for his post-operative hospitalization and recovery period. On the occasion in question, Mr. Hampton was left unattended in his hospital bed while an automatic pump administered pain medication. The bed was equipped with side rails designed to prevent Mr. Hampton from falling out of bed or from attempting to get out of bed. The bed was also equipped with an alarm designed to alert the nurses station if Mr. Hampton were to fall from the bed or attempt to remove himself from the bed. On the occasion in question, the bed rails were not secured in the raised position, as they should have been; the bed's alarm was not turned on, as it should have been; and Mr. Hampton was left unattended for an excessive amount of time.

Later in the petition, the Hamptons allege:
In particular, [the hospital, its agents, and employees] failed to exercise the accepted standard of care and were negligent generally in one or more of the following ways:

. . .

g. Failing to provide Mr. Hampton with a bed with properly raised rails;

h. Failing to provide Mr. Hampton with a bed with an activated bed sensor alarm;

i. Providing Mr. Hampton with a bed lacking bed rails;

j. Providing a bed that failed to provide for the established needs of Mr. Hampton making the bed defectively incomplete for its intended use;

k. Providing a bed that lacks an integral safety component;

## The Hamptons' Argument

In this appeal, the Hamptons argue that their pleading, when construed in their favor, alleges facts that show the trial court has jurisdiction under the Texas

Tort Claims Act. In essence, the Hamptons argue that their pleading alleges the hospital negligently provided Mr. Hampton with a hospital bed that was "defectively incomplete for its intended use" because it lacked essential safety components, i.e., *raised* bed rails and an *activated* alarm sensor. The Hamptons also allege the hospital misused the bed by failing to activate these safety components. Thus, the Hamptons contend that their pleadings state a cause of action arising out of the condition and use of the hospital's property.[1]

In support of their argument, the Hamptons cite three Texas Supreme Court cases: *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 170–71 (Tex.1989) (mentally disabled patient drowned when not provided a life preserver); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 299–300 (Tex.1976) (football uniform did not include a knee brace); and *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (hospital bed not equipped with bed rails). Likening the facts of the instant case to those reported in the Texas Supreme Court's decisions, the Hamptons argue that the "condition" of the hospital bed was "defectively incomplete" because it did not have either raised safety rails or an activated alarm sensor. The Hamptons also contend that the hospital's failure to activate the safety features constitutes a "misuse" of property within the waiver provisions of the Texas Tort Claims Act. *See Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32–33 (Tex.1983) (failure to properly use an electrocardiogram graph in diagnosing a heart attack).

### The Hospital's Response

The hospital argues that the Texas Supreme Court has limited its rulings in *Robinson, Lowe,* and *Overton* to situations where the plaintiff has alleged the defendant's personal property lacked some "integral safety component." *See Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998). The cases relied upon by the Hamptons are inapplicable, the hospital argues, because their petition acknowledges the hospital bed was equipped with bed rails and an alarm sensor at the time it was provided to Mr. Hampton. Therefore, the hospital contends the "real substance" of the Hamptons' claim is simply that the injury resulted from a "nonuse" of the property, and that a failure to use property cannot support a claim under the Texas Tort Claims Act. *See Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994) ("nonuse of available drugs during emergency medical treatment is not a use of tangible personal property that triggers waiver of sovereign immunity").

### The Court's Ruling

■ Under the applicable standards of review, we are required to interpret the allegations of the petition in the light most favorable to the Hamptons. *Texas Ass'n of Bus.*, 852 S.W.2d at 446; *Firemen's Ins. Co.*, 909 S.W.2d at 542. Applying this standard of review, we conclude that the Hamptons' petition does allege an injury caused by "a condition or use of tangible ... property" within the meaning of the Texas Tort Claims Act. TEX. CIV. PRAC. REM.CODE ANN. § 101.021(2) (Vernon 1997).

The Hamptons' petition alleges two bases for recovery under the Texas Tort Claims Act. The Hamptons first assert that the hospital negligently provided Mr. Hampton with a hospital bed that was defective because it lacked certain "integral safety components," i.e., *raised* bed rails that would have prevented Mr. Hampton from falling out of bed and an *activated* alarm sensor that would have alerted the nursing staff to his condition.

---

1. The Hamptons also alleged a bystander claim on behalf of Mrs. Hampton. However, the Hamptons do not complain of the granting of the plea to the jurisdiction on that basis, so we do not address the bystander claim. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993).

The Hamptons also allege that the hospital negligently *misused* its property because it failed to activate the safety equipment after providing the bed to Mr. Hampton.

Construing the Hamptons' petition in their favor, we infer from their allegations that the hospital, not Mr. Hampton, retained control of the bed's safety equipment both before and during the time the bed was furnished to him.

 We find no significant difference in this case and those in which governmental units provided personal property lacking some integral safety component. *See, e.g. Robinson,* 780 S.W.2d at 169 (swimming attire without life preserver); *Lowe,* 540 S.W.2d at 299 (football uniform without taping and knee braces); *Overton,* 518 S.W.2d at 529 (bed without safety rails). Here, the hospital provided Mr. Hampton a hospital bed with safety equipment attached but that equipment did not function unless and until it was activated by the hospital. The Hamptons allege (a) the bed was dangerously *defective* when provided to Mr. Hampton because its safety equipment had not been activated, and (b) there was a *misuse* of property by the hospital because the hospital did not activate the safety equipment after providing the bed to Mr. Hampton. *See Salcedo,* 659 S.W.2d at 32–33 (failure to properly use an electrocardiogram graph); *Wheeler v. Yettie Kersting Mem'l Hosp.,* 866 S.W.2d 32, 45–46 (Tex.App.—Houston [1st Dist.] 1993, no writ) (failure to use information in a medical chart); *Green v. City of Dallas,* 665 S.W.2d 567, 570 (Tex.App.—El Paso 1984, no writ) (failure to properly use medical equipment); *Mokry v. University of Tex. Health Science Ctr.,* 529 S.W.2d 802, 804 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (failure to use certain laboratory equipment during treatment). We overrule the hospital's argument that the failure to activate the safety equipment con-

stitutes a simple "non-use" of the property. A failure to properly use property does not equate to mere *non-use.* If the hospital had really not used the bed, it would have retained possession and not have provided the bed to Mr. Hampton. *See Kassen,* 887 S.W.2d at 15 (Phillips, C.J., concurring in relevant part).

We conclude that the allegations in the Hamptons' petition will support a cause of action under the Texas Tort Claims Act. We accordingly reverse the trial court's order dismissing the case with prejudice and remand the cause for further proceedings.[2]

---

**2.** The portion of the order relating to the bystander claim remains intact, not having been appealed. *See supra* note 1.