In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00022-CV

                                                ______________________________

 

 

                      TITUS REGIONAL MEDICAL CENTER,
Appellant

 

                                                                V.

 

                                GLENNA VIRGINIA ROACH, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 276th
Judicial District Court

                                                              Titus County, Texas

                                                            Trial
Court No. 34,786

 

                                                        
                                          

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            This
appeal calls on us to address an oft-debated, but seldom crystal clear issue
regarding a governmental entity’s immunity from suit.  Glenna Virginia Roach (Roach) underwent
surgery at Titus Regional Medical Center (Titus).  After Roach’s surgery, she was taken to a
hospital room and placed in a hospital bed. 
In her suit, Roach alleged that the hospital staff failed to raise the
bed’s safety rails and left her unattended while still under the influence of
anesthesia and that Titus failed to notify Roach’s family that she had been
placed in a room after the surgery was completed.  Roach fell from the bed and suffered
significant injuries.  This failure to
engage the bed’s safety rails or to notify her family that she was then unattended
in a room, alleged Roach, amounted to negligence and was the basis of her
lawsuit.[1]  Titus, in a pretrial motion, asserted the
governmental immunity provided in Section 102.021(2) of the Texas Civil
Practice and Remedies Code, which precludes suit against a governmental entity
except in certain prescribed circumstances; Roach claimed the hospital’s
immunity was waived because the acts alleged led to 

personal injury . . . caused by a condition or use
of tangible personal or real property [such that] the governmental unit would,
were it a private person, be liable to the claimant according to Texas law.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2011).  We concur with the determination by the trial
court that Roach’s pleadings alleged a cause of action which waived Titus’
immunity pertaining to the issue regarding the safety bed rails and we affirm
the trial court’s order as to that issue. 
We reverse the determination that the issue regarding the transmission
of information was waived and remand to the trial court for further proceedings
in accord with this opinion.

Immunity and Standard of Review

            Sovereign
immunity deprives a trial court of subject-matter jurisdiction for lawsuits in
which the State or certain governmental units have been sued unless the State
consents to the suit.  Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  In reviewing a trial court’s ruling on a plea
to the jurisdiction, we construe the pleadings in favor of the nonmovant and
look to the nonmovant’s intent.  Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  We are
not required to look solely to the pleadings when deciding a plea to the
jurisdiction; we may consider evidence relevant to jurisdiction when it is
necessary to resolve the jurisdictional issue raised.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  Whether a trial court has subject-matter
jurisdiction is a question of law which is subject to de novo review.  Tex.
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002); Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 928 (Tex. 1998).  Whether
a pleader has alleged facts which affirmatively demonstrate a trial court’s
subject-matter jurisdiction is a question of law reviewed de novo.  Likewise, whether undisputed evidence of
jurisdictional facts establishes a trial court’s jurisdiction is also a
question of law.  Miranda, 133 S.W.3d at 225–26.

“Use” of Property

            The applicable governmental immunity
statute and the scope of waiver expressed therein has a “long and arduous
history.”  York, 871 S.W.2d at 177.  No
proper examination of the issue of interpretation and application of the
governmental immunity statute would be complete without a review of several
much-discussed Texas Supreme Court cases which deal with the issue.  We begin that examination with a triumvirate
of cases, spanning the period from 1975 to 1989, in each of which the Texas Supreme
Court found the allegations of the respective plaintiffs were brought within
the statute’s contemplation of waiver of immunity. 

The “Outer Bounds” of Waiver of Governmental Immunity

            The
earliest of these three cases is Overton
Memorial Hospital v. McGuire, 518 S.W.2d 528 (Tex. 1975), in which the
plaintiff claimed that the hospital negligently provided a hospital bed that
possessed no safety rails; the plaintiff fell from the bed and was injured.  The provision of the rail-less bed, the
plaintiff claimed, was a use or condition of tangible personal property which
waived immunity.  The hospital raised
governmental immunity in its motion for summary judgment, saying that the want
of safety rails was a non-use of property, not a use of it; the trial court
granted the hospital’s motion for summary judgment on that basis.  The Texas Supreme Court held that if the
hospital were found to be negligent in failing to provide a bed without safety
rails, it could not assert governmental immunity.  Id. at
529.[2]  

            The
second case frequently cited in discussions of the history of governmental immunity
is Lowe v. Texas Tech University, 540
S.W.2d 297, 300 (Tex. 1976).  Lowe sued
Texas Tech University, alleging that the school was responsible for an injury
Lowe sustained while playing college football. 
Lowe claimed that his uniform included a knee brace (Lowe had suffered a
prior injury, necessitating the brace); Lowe’s suit alleged the coaching staff
either failed to provide Lowe with the brace or required him to play without
it.  As a result, Lowe suffered a second,
more serious, injury that precipitated the suit.  The Texas Supreme Court found, “Both the
standard and specially designed protective devices are integral parts of the
football uniform, e.g., special taping or knee braces furnished a player with
an injured knee are as much a part of his uniform as his helmet, or shoulder
pads, or whatever.”  Id.  Based on that rationale,
it was determined that the use of the football uniform (which included the knee
brace) was use of tangible personal property, thus bringing about a waiver of
immunity.

            In
the final one of the three cases, decided thirteen years later, the Texas Supreme
Court found a waiver of governmental immunity when the governmental agency
failed to provide a life preserver to a child (known to suffer seizures) who
was taken swimming while under the care of a governmental entity and who then
drowned.  Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169 (Tex. 1989).  The Texas Supreme Court found “[a] life
preserver was just as much a part of Robinson’s swimming attire as the knee
brace was part of the uniform in Lowe.”  Id. at
171.  Thus, the life preserver, as part
of the swimsuit, was deemed to be the use of tangible personal property as
contemplated in the statute; the allegation of liability because of the
governmental unit’s failure to provide a life preserver was not barred by the
claim of immunity.  Id.  

            Seven
years after the holding in Robinson,
the Texas Supreme Court described limitations on the holdings in Lowe and Robinson:  “These cases
represent perhaps the outer bounds of what we have defined as use of tangible
personal property.”  Kerrville State Hosp. v.
Clark, 923 S.W.2d 582, 585 (Tex. 1996).  Moreover, “[t]he precedential value of these
cases is therefore limited to claims in which a plaintiff alleges that a state
actor has provided property that lacks an integral safety component and that
the lack of this integral component led to the plaintiff’s injuries.”  Id.  The plaintiffs in Kerrville were the parents of a woman killed by her estranged
husband, a person who had been treated for mental illnesses at the state
hospital.  When the husband/patient was
discharged, he was provided with oral medications to take with him upon his
discharge.  The patient murdered his wife
(daughter of the plaintiffs); the plaintiffs claimed that the hospital was
negligent in prescribing oral medications and that he should, instead, have
been medicated by injection.  The Texas Supreme
Court stated that the issue was whether the hospital’s “administration of an
oral form of Thorazine, rather than an injectionable drug, constitutes use or
misuse of tangible personal property under the terms of the Texas Tort Claims
Act,” and held that “failure to administer an injectionable drug is non-use of
tangible personal property and therefore does not fall under the waiver
provisions of the Act.”  Id. at 584.

The Instant Case

            Titus relies on Kerrville’s description of a non-use of tangible property; Titus
maintains that in this case, the allegation that the hospital staff failed to
raise the safety rails equates to an allegation that the hospital did not use
the safety rails.  Going further, Titus
concludes that Roach’s allegation is based on a non-use of property, rather
than a use of it.  Just as the Kerrville hospital did not waive its
immunity by failing to use an injectable format of medication, reasons Titus,
it did not waive immunity by a failure to use the rails. 

            Roach
in turn cites us to Hampton v. University
of Texas, 6 S.W.3d 627 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  The plaintiffs in Hampton, like Roach, claimed the patient fell from his hospital bed
because the hospital did not engage the bed’s safety rails.  Interpreting the petition’s allegations in
the light most favorable to the plaintiffs, the Houston First Court of Appeals
found the petition did indeed allege an injury caused by a condition or use of
tangible property; therefore, the hospital’s governmental immunity had been
waived.  Id. at 630.  Hampton claimed
that the hospital’s failure to implement the safety features was a misuse of
tangible property; according to the opinion, the petition also alleged
negligence in the hospital’s providing a defective bed, i.e., one that lacked
essential safety features––raised safety rails. 
Id.  The court of appeals construed Hampton’s
pleadings to allege that the hospital, not Hampton, retained control over the
bed’s safety features, before and during the time Hampton used the bed.  Id. at
631.  The court discussed Overton, Lowe, and Robinson and
found “no significant difference in this case and those in which governmental
units provided personal property lacking some integral safety component.”  Id.[3]  The court pointed out the hospital supplied
Hampton with a bed with attached safety equipment, which did not function until
it was activated by the hospital.  The
court rejected the hospital’s defense that failure to activate the safety
equipment in question was a non-use of the property.  This is the same argument Titus makes in this
case.  

            Obviously,
the circumstances in Hampton were
quite similar to those in Roach’s case. 
It is difficult for us to contemplate how, when a patient is placed in a
bed as part of the hospital’s treatment of that patient, the bed is not being
used in the treatment.  The rails are
quite different from the knee brace in Lowe
or the life preserver in Robinson
because the rails simply cannot be used at all unless they are used as a part
of the bed.  Therefore, the examination
of whether there is a use of property as contemplated in the statute, the
“property” in question is the entire bed and not its adjunctive safety
rails.  Where the bed is equipped with
safety rails, it is likewise difficult to conjure how those rails were not meant
to be used:  positioned so as to effectuate
their protective purposes.  The safety
rails on a hospital bed are integral parts of the bed, just as the brakes on a
wheel chair would be parts of the chair, or the doors on an automobile would be
parts of the car.  “[F]or ‘use’ of
tangible personal property to occur under the terms of the Act, one must ‘put
or bring [the property] into action or service; to employ for or apply to a
given purpose.’”  Kerrville State Hosp., 923 S.W.2d at 584 (citations omitted).  

            While
the circumstances in Hampton are all
but identical to the case before us, and that case’s holding is persuasive, we
must be bound by the Texas Supreme Court’s holdings.  Titus relies on the Kerrville holding that non-use of a possible treatment method
(supplying a patient’s medication via injection, rather than merely physically
providing the medication to the patient) did not constitute use as contemplated
by the waiver statute.  “The gravamen of
their complaint is that [the hospital’s] non-use of an injectionable drug was
the cause of their daughter’s death. 
This failure to use a form of drug is just as much a non-use of a drug
as was the hospital’s failure to give its patient her medicine in Kassen.”[4]  Id. at
585.  Pointing out that almost every
instance of treatment by doctors in state medical facilities involves some form
of tangible property, the court said there could not be a waiver of immunity in
each such occurrence, lest a patient could “always complain that a different
form of treatment than the one employed would have been more effective and
still claim waiver under the Act.  If
such a complaint were enough to constitute the use of tangible personal
property under the Act, the doctrine of sovereign immunity would be rendered a
nullity.”  Id. at 586.  Unlike Kerrville, there can be no medical
decision in our contemplation which would involve not properly positioning the
safety rails on Roach’s bed. 

            Situations
involving failure to give medication or give medication in a particular format
are distinguishable from situations where equipment (which would qualify as
tangible property) is used by a state actor hospital, but not used according to
the equipment’s contemplated purposes. 
Roach’s allegation that she was placed in a hospital bed that was
equipped with safety rails which were not engaged or used qualifies as a use of
tangible property by the state entity. 
If the hospital did not, as Roach alleges, raise or engage the bed’s
attached safety rails, that “non-raising” does not equate to “non-use” as
contemplated by the Texas Supreme Court in Kerrville.
 Such a literal analysis of the situation
does not comport with the overall meaning of the statute.  In Kerrville,
the Texas Supreme Court offered the following hypothetical:

For example, if a hospital provided a patient with
a bed lacking bed rails and the lack of this protective equipment led to the
patient’s injury, the Act’s waiver provisions would be implicated.  

 

Id. at 585 (citing Lowe,
540 S.W.2d at 300).  It is just as
reasonable that if a hospital supplies a patient with a bed equipped with
safety rails, but does not activate or engage those rails, coupled with the
fact that the failure to utilize the rails is the proximate cause of the
patient’s injury, the statute’s waiver provisions would be implicated.  Referring to Overton, the earlier hospital bed case where the bed did not have
rails, the Texas Supreme Court pointed out, “[t]he hospital did not merely
allow the patient access to the bed; it actually put the patient in the bed as
part of his treatment.”  San Antonio State Hosp. v. Cowan, 128
S.W.3d 244, 246 (Tex. 2004).[5]  Roach alleged in her petition that she was
placed in the hospital’s bed immediately after being brought from the recovery
room after surgery and the rails were not raised.  The rails were part of the bed; failing to
properly employ the bed qualifies as the hospital’s use of its tangible
property.  Roach’s allegations were
sufficient to implicate the statute’s waiver of immunity provision.[6]  

            We
affirm the trial court’s denial of Titus’ claim of governmental immunity solely
on the basis that the use of the hospital bed (with its safety rails) was a use
of tangible personal property as contemplated in the statute.  We reverse the determination that there has
been no waiver of governmental immunity as to Roach’s claim of negligence
pertaining to the hospital’s failure to notify Roach’s family that she had been
returned to her room after surgery and remand to the trial court for further
proceedings in accord with this opinion.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
8, 2011

Date Decided:             June
24, 2011

 











[1]Roach
also alleged negligence by Titus in failing to alert Roach’s family that she
had been moved from surgery to her room. 
Roach concedes at argument that any negligence in this failure involved
“use” of information (i.e., the knowledge that she had been moved from surgery
to her room) and thus could not constitute “use” of tangible property for
purposes of the waiver of governmental immunity, which is the sole issue on
appeal.  See Univ. of Tex. Med. Branch
at Galveston v. York, 871 S.W.2d 175 (Tex. 1994).





[2]Years
later, the Texas Supreme Court described the situation in Overton:  “The hospital did
not merely allow the patient access to the bed; it actually put the patient in
the bed as part of his treatment.”  San Antonio State Hosp. v. Cowan, 128
S.W.3d 244, 246 (Tex. 2004).





[3]Hampton does not mention or discuss Kerrville, although released three years
after that Texas Supreme Court case.  





[4]Kassen v. Hatley, 887 S.W.2d 4 (Tex.
1994).  In Kassen, a mental patient admitted to a state hospital was seen taking
her medication in excessive quantities.  Id. at 7.  Hospital employees therefore took the patient’s
medication away from her.  Id.  The hospital refused to return the medication
to the patient when she left the hospital, and she committed suicide a short
time later.  Id.  The patient’s parents
sued the hospital and its employees for wrongful death, claiming that the
hospital employees’ failure to provide the patient with medication when she
left the hospital caused her death.  Id.  The Texas Supreme Court concluded that “[t]his
sequence of events does not allege an injury arising from the ‘use’ of the
medication.  It states a claim for
non-use of property that does not trigger waiver of sovereign immunity under
the Texas Tort Claims Act.”  Id. at 14.





[5]In
Cowan, the hospital allowed the
patient to retain personal property, suspenders, and a walker, which he later
used to commit suicide.  This was held
not to be “use” as contemplated by the statute.





[6]In
its briefing and at oral argument, Titus refers us to our opinion in Texas State Technical College v. Beavers,
where we said, 

 

The integral safety component
must be entirely lacking, rather than merely inadequate. . . .  Stated conversely, supplying safety
components that are inadequate, but not entirely lacking, does not constitute a
use of personal property so as to waive immunity. 

 

218 S.W.3d 258, 264 (Tex. App.––Texarkana 2007, no
pet.) (citing Tex. A & M Univ. v.
Bishop, 156 S.W.3d 580, 584 (Tex. 2005) (claim that knife used in college
drama production inherently unsafe without an adequate stab pad did not mean
integral safety component lacking for purposes of governmental immunity
waiver)).  Here, even if the bed’s rails
were characterized as integral safety components, they were neither lacking nor
inadequate.  They simply were not used
despite being part of the bed, which was used in Roach’s post-surgery
treatment.