In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00139-CR

                                                ______________________________

 

 

                                  TERRY WAYNE ASHLEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR00370

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Terry
Wayne Ashley appeals from the revocation of his community supervision and
sentence to ten years’ imprisonment.  He
was convicted of a third-degree felony for the offense of obscenity.  Tex.
Penal Code Ann. § 43.23 (West 2011).

            Ashley’s
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail, providing possible issues but explaining why they cannot
succeed.  Counsel has thus provided a
professional evaluation of the record demonstrating why, in effect, there are
no arguable grounds to be advanced.  This
meets the requirements of Anders v. California,
386 U.S. 738 (1967); Stafford v. State,
813 S.W.2d 503 (Tex. Crim. App. 1981); and High
v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief and a letter to Ashley on November 14, 2011,
informing Ashley of his right to file a pro se response and of his right to
review the record.  No response has been
filed.  Counsel has also filed a motion
with this Court seeking to withdraw as counsel in this appeal.  

            We
have determined that this appeal is wholly frivolous.  We have independently reviewed the clerk’s
record and the reporter’s record, and find no genuinely arguable issue.  See Halbert v. Michigan, 545 U.S. 605, 623 (2005).  We, therefore, agree with counsel’s
assessment that no arguable issues support an appeal.  See
Bledsoe v. State, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005).  

            We
affirm the judgment of the trial court.[1]

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          January 30, 2012

Date
Decided:             January 31, 2012

 

Do
Not Publish

 

 

 











[1]Since we agree this case presents no reversible error,
we also, in accordance with Anders,
grant counsel’s request to withdraw from further representation of appellant in
this case.  No substitute counsel will be
appointed.  Should appellant wish to seek
further review of this case by the Texas Court of Criminal Appeals, appellant
must either retain an attorney to file a petition for discretionary review or
appellant must file a pro se petition for discretionary review.  Any petition for discretionary review must be
filed within thirty days from the date of either this opinion or the last timely
motion for rehearing or for en banc reconsideration was overruled by this
Court.  See Tex. R. App. P.
68.2.  Any petition for discretionary
review must be filed with the clerk of the Texas Court of Criminal
Appeals.  See Tex. R. App. P.
68.3 (amended by the Texas Court of Criminal Appeals Misc. Docket No. 11-104,
effective Sept. 1, 2011).  Any petition
for discretionary review should comply with the requirements of Rule 68.4 of
the Texas Rules of Appellate Procedure.  See Tex.
R. App. P. 68.4.








'text-align:justify;text-justify:inter-ideograph;
line-height:200%;mso-pagination:widow-orphan'>            In
the final one of the three cases, decided thirteen years later, the Texas Supreme
Court found a waiver of governmental immunity when the governmental agency
failed to provide a life preserver to a child (known to suffer seizures) who
was taken swimming while under the care of a governmental entity and who then
drowned.  Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169 (Tex. 1989).  The Texas Supreme Court found “[a] life
preserver was just as much a part of Robinson’s swimming attire as the knee
brace was part of the uniform in Lowe.”  Id. at
171.  Thus, the life preserver, as part
of the swimsuit, was deemed to be the use of tangible personal property as
contemplated in the statute; the allegation of liability because of the
governmental unit’s failure to provide a life preserver was not barred by the
claim of immunity.  Id.  

            Seven
years after the holding in Robinson,
the Texas Supreme Court described limitations on the holdings in Lowe and Robinson:  “These cases
represent perhaps the outer bounds of what we have defined as use of tangible
personal property.”  Kerrville State Hosp. v.
Clark, 923 S.W.2d 582, 585 (Tex. 1996).  Moreover, “[t]he precedential value of these
cases is therefore limited to claims in which a plaintiff alleges that a state
actor has provided property that lacks an integral safety component and that
the lack of this integral component led to the plaintiff’s injuries.”  Id.  The plaintiffs in Kerrville were the parents of a woman killed by her estranged
husband, a person who had been treated for mental illnesses at the state
hospital.  When the husband/patient was
discharged, he was provided with oral medications to take with him upon his
discharge.  The patient murdered his wife
(daughter of the plaintiffs); the plaintiffs claimed that the hospital was
negligent in prescribing oral medications and that he should, instead, have
been medicated by injection.  The Texas Supreme
Court stated that the issue was whether the hospital’s “administration of an
oral form of Thorazine, rather than an injectionable drug, constitutes use or
misuse of tangible personal property under the terms of the Texas Tort Claims
Act,” and held that “failure to administer an injectionable drug is non-use of
tangible personal property and therefore does not fall under the waiver
provisions of the Act.”  Id. at 584.

The Instant Case

            Titus relies on Kerrville’s description of a non-use of tangible property; Titus
maintains that in this case, the allegation that the hospital staff failed to
raise the safety rails equates to an allegation that the hospital did not use
the safety rails.  Going further, Titus
concludes that Roach’s allegation is based on a non-use of property, rather
than a use of it.  Just as the Kerrville hospital did not waive its
immunity by failing to use an injectable format of medication, reasons Titus,
it did not waive immunity by a failure to use the rails. 

            Roach
in turn cites us to Hampton v. University
of Texas, 6 S.W.3d 627 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  The plaintiffs in Hampton, like Roach, claimed the patient fell from his hospital bed
because the hospital did not engage the bed’s safety rails.  Interpreting the petition’s allegations in
the light most favorable to the plaintiffs, the Houston First Court of Appeals
found the petition did indeed allege an injury caused by a condition or use of
tangible property; therefore, the hospital’s governmental immunity had been
waived.  Id. at 630.  Hampton claimed
that the hospital’s failure to implement the safety features was a misuse of
tangible property; according to the opinion, the petition also alleged
negligence in the hospital’s providing a defective bed, i.e., one that lacked
essential safety features––raised safety rails. 
Id.  The court of appeals construed Hampton’s
pleadings to allege that the hospital, not Hampton, retained control over the
bed’s safety features, before and during the time Hampton used the bed.  Id. at
631.  The court discussed Overton, Lowe, and Robinson and
found “no significant difference in this case and those in which governmental
units provided personal property lacking some integral safety component.”  Id.[3]  The court pointed out the hospital supplied
Hampton with a bed with attached safety equipment, which did not function until
it was activated by the hospital.  The
court rejected the hospital’s defense that failure to activate the safety
equipment in question was a non-use of the property.  This is the same argument Titus makes in this
case.  

            Obviously,
the circumstances in Hampton were
quite similar to those in Roach’s case. 
It is difficult for us to contemplate how, when a patient is placed in a
bed as part of the hospital’s treatment of that patient, the bed is not being
used in the treatment.  The rails are
quite different from the knee brace in Lowe
or the life preserver in Robinson
because the rails simply cannot be used at all unless they are used as a part
of the bed.  Therefore, the examination
of whether there is a use of property as contemplated in the statute, the
“property” in question is the entire bed and not its adjunctive safety
rails.  Where the bed is equipped with
safety rails, it is likewise difficult to conjure how those rails were not meant
to be used:  positioned so as to effectuate
their protective purposes.  The safety
rails on a hospital bed are integral parts of the bed, just as the brakes on a
wheel chair would be parts of the chair, or the doors on an automobile would be
parts of the car.  “[F]or ‘use’ of
tangible personal property to occur under the terms of the Act, one must ‘put
or bring [the property] into action or service; to employ for or apply to a
given purpose.’”  Kerrville State Hosp., 923 S.W.2d at 584 (citations omitted).  

            While
the circumstances in Hampton are all
but identical to the case before us, and that case’s holding is persuasive, we
must be bound by the Texas Supreme Court’s holdings.  Titus relies on the Kerrville holding that non-use of a possible treatment method
(supplying a patient’s medication via injection, rather than merely physically
providing the medication to the patient) did not constitute use as contemplated
by the waiver statute.  “The gravamen of
their complaint is that [the hospital’s] non-use of an injectionable drug was
the cause of their daughter’s death. 
This failure to use a form of drug is just as much a non-use of a drug
as was the hospital’s failure to give its patient her medicine in Kassen.”[4]  Id. at
585.  Pointing out that almost every
instance of treatment by doctors in state medical facilities involves some form
of tangible property, the court said there could not be a waiver of immunity in
each such occurrence, lest a patient could “always complain that a different
form of treatment than the one employed would have been more effective and
still claim waiver under the Act.  If
such a complaint were enough to constitute the use of tangible personal
property under the Act, the doctrine of sovereign immunity would be rendered a
nullity.”  Id. at 586.  Unlike Kerrville, there can be no medical
decision in our contemplation which would involve not properly positioning the
safety rails on Roach’s bed. 

            Situations
involving failure to give medication or give medication in a particular format
are distinguishable from situations where equipment (which would qualify as
tangible property) is used by a state actor hospital, but not used according to
the equipment’s contemplated purposes. 
Roach’s allegation that she was placed in a hospital bed that was
equipped with safety rails which were not engaged or used qualifies as a use of
tangible property by the state entity. 
If the hospital did not, as Roach alleges, raise or engage the bed’s
attached safety rails, that “non-raising” does not equate to “non-use” as
contemplated by the Texas Supreme Court in Kerrville.
 Such a literal analysis of the situation
does not comport with the overall meaning of the statute.  In Kerrville,
the Texas Supreme Court offered the following hypothetical:

For example, if a hospital provided a patient with
a bed lacking bed rails and the lack of this protective equipment led to the
patient’s injury, the Act’s waiver provisions would be implicated.  

 

Id. at 585 (citing Lowe,
540 S.W.2d at 300).  It is just as
reasonable that if a hospital supplies a patient with a bed equipped with
safety rails, but does not activate or engage those rails, coupled with the
fact that the failure to utilize the rails is the proximate cause of the
patient’s injury, the statute’s waiver provisions would be implicated.  Referring to Overton, the earlier hospital bed case where the bed did not have
rails, the Texas Supreme Court pointed out, “[t]he hospital did not merely
allow the patient access to the bed; it actually put the patient in the bed as
part of his treatment.”  San Antonio State Hosp. v. Cowan, 128
S.W.3d 244, 246 (Tex. 2004).[5]  Roach alleged in her petition that she was
placed in the hospital’s bed immediately after being brought from the recovery
room after surgery and the rails were not raised.  The rails were part of the bed; failing to
properly employ the bed qualifies as the hospital’s use of its tangible
property.  Roach’s allegations were
sufficient to implicate the statute’s waiver of immunity provision.[6]  

            We
affirm the trial court’s denial of Titus’ claim of governmental immunity solely
on the basis that the use of the hospital bed (with its safety rails) was a use
of tangible personal property as contemplated in the statute.  We reverse the determination that there has
been no waiver of governmental immunity as to Roach’s claim of negligence
pertaining to the hospital’s failure to notify Roach’s family that she had been
returned to her room after surgery and remand to the trial court for further
proceedings in accord with this opinion.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
8, 2011

Date Decided:             June
24, 2011

 











[1]Roach
also alleged negligence by Titus in failing to alert Roach’s family that she
had been moved from surgery to her room. 
Roach concedes at argument that any negligence in this failure involved
“use” of information (i.e., the knowledge that she had been moved from surgery
to her room) and thus could not constitute “use” of tangible property for
purposes of the waiver of governmental immunity, which is the sole issue on
appeal.  See Univ. of Tex. Med. Branch
at Galveston v. York, 871 S.W.2d 175 (Tex. 1994).





[2]Years
later, the Texas Supreme Court described the situation in Overton:  “The hospital did
not merely allow the patient access to the bed; it actually put the patient in
the bed as part of his treatment.”  San Antonio State Hosp. v. Cowan, 128
S.W.3d 244, 246 (Tex. 2004).





[3]Hampton does not mention or discuss Kerrville, although released three years
after that Texas Supreme Court case.  





[4]Kassen v. Hatley, 887 S.W.2d 4 (Tex.
1994).  In Kassen, a mental patient admitted to a state hospital was seen taking
her medication in excessive quantities.  Id. at 7.  Hospital employees therefore took the patient’s
medication away from her.  Id.  The hospital refused to return the medication
to the patient when she left the hospital, and she committed suicide a short
time later.  Id.  The patient’s parents
sued the hospital and its employees for wrongful death, claiming that the
hospital employees’ failure to provide the patient with medication when she
left the hospital caused her death.  Id.  The Texas Supreme Court concluded that “[t]his
sequence of events does not allege an injury arising from the ‘use’ of the
medication.  It states a claim for
non-use of property that does not trigger waiver of sovereign immunity under
the Texas Tort Claims Act.”  Id. at 14.





[5]In
Cowan, the hospital allowed the
patient to retain personal property, suspenders, and a walker, which he later
used to commit suicide.  This was held
not to be “use” as contemplated by the statute.





[6]In
its briefing and at oral argument, Titus refers us to our opinion in Texas State Technical College v. Beavers,
where we said, 

 

The integral safety component
must be entirely lacking, rather than merely inadequate. . . .  Stated conversely, supplying safety
components that are inadequate, but not entirely lacking, does not constitute a
use of personal property so as to waive immunity. 

 

218 S.W.3d 258, 264 (Tex. App.––Texarkana 2007, no
pet.) (citing Tex. A & M Univ. v.
Bishop, 156 S.W.3d 580, 584 (Tex. 2005) (claim that knife used in college
drama production inherently unsafe without an adequate stab pad did not mean
integral safety component lacking for purposes of governmental immunity
waiver)).  Here, even if the bed’s rails
were characterized as integral safety components, they were neither lacking nor
inadequate.  They simply were not used
despite being part of the bed, which was used in Roach’s post-surgery
treatment.