Opinion issued May 6, 2021



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-20-00357-CV

———————————

**JAMES THOMAS GREEN, Appellant**

**V.**

**HARRIS COUNTY INSTITUTE OF FORENSIC SCIENCES; LUIS A. SANCHEZ, M.D.; HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE; KIM OGG; AND OTHERS, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-09456**

---

### MEMORANDUM OPINION

James Thomas Green appeals the trial court's order granting a plea to the jurisdiction. Having determined that the trial court lacked jurisdiction, we affirm.

## Background

In August 1995, James Thomas Green was driving his car with his wife, Sharon, as the front seat passenger. As they drove through an intersection, Green forced Sharon from the moving vehicle, causing her to fall on the street. Green stopped the car, returned to where Sharon fell, lifted her head up, and smashed it into the street. A jury convicted Green of murder and sentenced him to 35 years in prison.

In January 2019, Green sought to reopen an inquest into Sharon's death. Green sued Harris County Institute of Forensic Sciences (HCIFS), Harris County Medical Examiner Luis A. Sanchez, M.D., and Harris County District Attorney Kim Ogg. He alleged that Dr. Sanchez had falsified Sharon's autopsy report and that her death resulted from something other than homicide.

Green later amended his petition, perfected service on HCIFS and Dr. Sanchez, claimed "defamation per se," "fraud on the court," and "violations of constitutional and statutory rights." He asked the trial court to declare that (1) the defendants had abused their discretion by refusing to direct HCIFS to reopen the inquest and (2) Dr. Sanchez had falsified Sharon's autopsy report. He sought injunctive relief to compel the defendants to remove the autopsy report from "public information." He also sought compensatory and punitive damages.

HCIFS and Dr. Sanchez filed a plea to the jurisdiction based on sovereign and governmental immunity and sought dismissal of the case.[1] They asserted that Green could not sue HCIFS, as a *non sui juris*[2] division of Harris County, because it did not have the legal capacity to be sued. Because Green did not distinguish whether he sued Dr. Sanchez in his official or individual capacity, the plea addressed why dismissal was appropriate either way. They argued that Green could not sue Dr. Sanchez in his official capacity because he was an agent of Harris County, and the County had not waived immunity. They also argued that Green could not sue Dr. Sanchez in his individual capacity because the evidence did not establish that Dr. Sanchez had abused his discretion by refusing to reopen an inquest on Green's wife.

HCIFS and Dr. Sanchez attached Sharon's autopsy report and affidavits from medical examiners providing that  reopening the inquest was unsupported by credible facts. Dr. V. Parungao, the medical examiner who performed the autopsy and drafted the autopsy report, concluded that Sharon "came to her death as a result of left subdural hemorrhage [sic] dropped to the ground, homicide." Similarly, Dr. D. Wolf and Dr. Sanchez both found that their review of the autopsy report and other

---

[1]    The other named defendants did not participate in the trial court proceedings because Green did not serve them with process.

[2]    This Latin term means a legal entity that lacks the legal capacity to be sued. *See Non Sui Juris*, BLACK'S LAW DICTIONARY (11th ed. 2019).

evidence supported homicide as the manner of death and concluded that no evidence supported a different cause or manner of death.

Green responded to the plea and argued HCIFS and Dr. Sanchez had waived their right to file a plea to the jurisdiction because they refused or failed to respond to his prior requests for admissions, and thus the deemed admissions supported his claims.[3] He also argued that Dr. Parungao's testimony proved that an inquest was supported by credible evidence because Dr. Parungao testified that, "This is not a . . . homicide, it's something different."[4] Green did not attach any responsive evidence.

HCIFS and Dr. Sanchez replied and attached their previous responses to Green's request for admissions.

The trial court granted the plea to the jurisdiction, dismissed HCIFS as a *non sui juris* entity, and dismissed the suit with prejudice against Dr. Sanchez.

Green appealed.

---

[3]     If a party fails to timely respond to a request for admissions within 30 days after service of the request, the request is considered admitted. TEX. R. CIV. P. 198.2(a), (c).

[4]     Although this quote contains an ellipsis, we did not omit any information. This is how the quote appears in Green's responsive pleading.

4

## Plea to the Jurisdiction

In three issues, Green contends the trial court erred by (1) granting the plea to the jurisdiction, (2) dismissing HCFIS without first allowing him to amend his petition to name the correct defendant, and (3) dismissing claims against Dr. Sanchez with prejudice. In response, HCFIS and Dr. Sanchez argue that Green's claims were barred by sovereign immunity, and thus the trial court did not err by granting the plea, refusing amendment, or dismissing the claims against Dr. Sanchez with prejudice.

### A. Standard of review

We review the trial court's ruling on a plea to the jurisdiction de novo. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). We likewise review any questions of statutory construction de novo. *Id.*

### B. Applicable law

A suit against a governmental entity requires a plaintiff to establish both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). The governmental entity is immune from the suit if "the pleadings affirmatively negate the existence of jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). A governmental entity may raise its immunity through a plea to the jurisdiction, a dilatory plea that seeks dismissal of a

case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999) (per curiam) (sovereign immunity "defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction."). The plaintiff has the burden to allege facts that "affirmatively demonstrate" that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A defendant may file a plea to the jurisdiction to challenge whether the plaintiff has met its burden of alleging jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27. A defendant may also file a plea to the jurisdiction to attack the existence of jurisdictional facts. *Id.*

A court may consider evidence that is relevant to jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). "[W]hen a plea to the jurisdiction challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see* TEX. R. CIV. P. 166a(c). If the defendant shows that the trial court lacks jurisdiction, the plaintiff must then show that there is a material fact question about jurisdiction. *Miranda*, 133 S.W.3d at 227–28. If the evidence raises a fact issue on jurisdiction, the plea cannot be granted, and a fact

finder must resolve the issue. *Id*. But if the evidence is undisputed or fails to raise a fact issue, the trial court must grant the plea to the jurisdiction. *Id*. at 228.

**C.    Sovereign immunity**

Sovereign immunity protects the State and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Collier v. Suhre*, 605 S.W.3d 699, 703 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Generally, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits against the State, unless the State's immunity has been waived. *Miranda*, 133 S.W.3d at 224; *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 34 n.2 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). A trial court must dismiss the suit with prejudice if the suit is barred by sovereign immunity because it lacks subject matter jurisdiction. *See Hampton v. Univ. of Tex.–M.D. Anderson Cancer Ctr.*, 6 S.W.3d 627, 629 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

The Texas Tort Claims Act (TTCA) provides a limited waiver of sovereign immunity in limited circumstances. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–101.109; *see Miranda*, 133 S.W.3d at 224. The TTCA waives immunity for claims seeking to impose liability for

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

7

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021. The TTCA waives a governmental entity's immunity from suit on all claims for which it waives immunity from liability. *Id.* § 101.025; *City of League City v. LeBlanc*, 467 S.W.3d 616, 620 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The TTCA does not waive a governmental entity's immunity from suit for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2).

The evidence reflects that HCIFS and, in his official capacity, Dr. Sanchez, are governmental units[5] within the scope of the TTCA. Green did not allege any claims against HCIFS or Dr. Sanchez entitling him to waiver of immunity under the TTCA. *Cf.* TEX. CIV. PRAC. & REM. CODE § 101.021 (authorizing claims for property damage, personal injury, and death against governmental units). The TTCA declares that the State does not waive immunity for claims arising out of intentional torts. *See id.* § 101.057(2). Green sued for "defamation per se" and "fraud on the court."[6] *See*

---

[5]     TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B) (defining "governmental unit" as a "political subdivision of this state").

[6]     Green also alleged "violations of constitutional and statutory rights" against HCIFS and Dr. Sanchez. In reviewing his petition, Green's pleaded facts

8

*id.* Thus, Green's claims do not fall within any of the enumerated exceptions to the general rule of immunity because they are intentional torts. *See, e.g.*, *City of Friendswood v. Horn*, 489 S.W.3d 515, 529 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (intentional tort claim—misrepresentation—fell outside scope of waiver of immunity); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ) (governmental unit immune from liability for defamation and other intentional torts); *Leatherwood v. Prairie View A & M Univ.*, No. 01-02-01334-CV, 2004 WL 253275, at *3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2004, no pet.) (mem. op.) (appellant's claim failed because "defamation is an intentional tort, for which the [TTCA] does not waive immunity"). For these reasons, HCIFS and Dr. Sanchez have established that sovereign immunity bars Green's claims, depriving the trial court of subject matter jurisdiction. *See Jones*, 8 S.W.3d at 638 (trial court lacks jurisdiction over suit against governmental unit unless the unit has waived immunity).

As for his request for equitable and injunctive relief under the Uniform Declaratory Judgments Act (UDJA), Green asked the trial court to declare that HCIFS and Dr. Sanchez abused their discretion by refusing to (1) reopen the inquest and compel HCFIS and Dr. Sanchez to do so, (2) remove the autopsy report from

---

amounting to intentional conduct. We need not provide a separate analysis for this claim because its resolution is the same as the others.

public information, and (3) change the cause of death. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.002(b), 37.004(a), 37.008. HCFIS and Dr. Sanchez contend that Green's claim for equitable and injunctive relief is barred by sovereign immunity.

The purpose of the UDJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE § 37.002(b). The UDJA waives governmental immunity to allow suits by plaintiffs who allege (1) claims challenging the validity of an ordinance or statute, or (2) ultra vires claims against state officials who allegedly act without legal or statutory authority or who fail to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 & n.6 (Tex. 2009); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Green did not challenge an ordinance or statute. He did, however, allege that HCIFS and Dr. Sanchez committed an ultra vires act by not reopening the inquest into his wife's death. The Code of Criminal Procedure allows for reopening an inquest upon certain evidence:

> A justice of the peace may reopen an inquest if, based on information provided by a credible person or facts within the knowledge of the justice of the peace, the justice of the peace determines that reopening the inquest may reveal a different cause or different circumstances of death.

TEX. CODE CRIM. PROC. art. 49.041. Green presented no evidence from a "credible person" to dispute the medical examiners' findings. Nor did he provide any credible

10

facts. Instead, Green cites Dr. Parungao's trial testimony, omitting certain words to make it appear as if Dr. Parungao had testified to a different cause or manner of death:

> (1) Within Green's original and amended complaint(s) he presents and correctly cites easily verifiable judicial evidence and credible information and facts establishing a prima facie case that mistakes were made during the initial inquest and autopsy.
>
> (2) It is reasonable to ascertain, in view of the credible information in Green's complaint(s), that a new inquest might reveal a different cause or different circumstances respective to Sharon's death and manner thereof whereas Dr. Parungao (who performed the autopsy) ultimately stated: "This is not . . . homicide, it's something different."

But Green's assertion is grossly misleading. The trial transcript provides the full context of Dr. Parungao's testimony where he discussed general procedures for releasing autopsy reports:

> **Counsel**: All right. Now, is it a fact that the Harris County Medical Examiner's Office do [sic] not release, as a matter of public record, the autopsy report until the police have submitted an offense report so you can corroborate the two and make sure that your facts comport to what is in the offense report?
>
> **Dr. Parungao**: Those cases that we don't know like this one what happened, I wait for the police report so I can see what happened because I'm the one who wants it if I could not determine—I want to be sure how this thing happened. So, I wait for the police report and I don't know what time it's going to come. Sometimes, they're quick, sometimes it's weeks, sometimes months. I have to have time to read and study the case and that's what I base it on. *But he's right, I want to know what the police report says of*

11

*the incident at the time so I can recall because this is not a clear cut like stab wound or homicide, it's something different.*

Dr. Wolf independently reviewed Dr. Parungao's testimony, provided an affidavit outlining his medical conclusions, and noted that a language barrier could have possibly contributed to Green's misinterpretation of Dr. Parungao's testimony:

> During cross-examination, Dr. Parungao further made a distinction between more straightforward cases, like gunshot wounds or stab wounds and blunt trauma causes where in the latter, having the police [report] is often key to determination of manner of death. "Those cases that we don't know like this one what happened, I wait for the police report so I can see what happened . . . I want to be sure how this thing happened." [A quote from Dr. Parungao's testimony.] It was in this discussion that he said ". . . I want to know what the police report says of the incident at that time so I can recall because this is not a clear cut like stab wound or homicide, it's something different." [Another quote from Dr. Parungao's testimony.] Although his English was less than clear, it is clear what he meant by this statement—that the determination of manner of death in a blunt head trauma case like this was not as straightforward as determination of manner of death in a stabbing case; determination of manner in a case like this depended on gathering investigative information from the police report. What he did NOT mean was that this case was a homicide.

In addition, Dr. Wolf independently reviewed of the autopsy report and the medical examiner's file and concluded that no evidence supported reopening the inquest. Dr. Wolf concluded that the initial inquest performed on Sharon was "complete, adequate, meaningful, and performed to today's standards."

Dr. Sanchez also reviewed the autopsy report and agreed with Dr. Parungao's determinations. In his affidavit, Dr. Sanchez stated, "To my knowledge, no credible

person has come forward with any new relevant information that would lead me to determine that reopening the inquest may reveal a different cause or manner of death" of Sharon.

Green presented no countervailing evidence from medical experts disputing the conclusions made by Dr. Parungao, Dr. Wolf, and Dr. Sanchez. Nor did he provide any other evidence to support his ultra vires claim.

Based on our careful review of the record, we hold that Green did not present evidence establishing an ultra vires claim against HCFIS or Dr. Sanchez for failing to reopen the inquest. *See Salinas Mestiza v. De Leon*, No. 13-00-783-CV, 2002 WL 1290053, at *2 (Tex. App.—Corpus Christi June 13, 2002, no pet.) (mem. op.) (appellant presented no evidence showing that justice of the peace abused his discretion in refusing to reopen an inquest into decedent's death). Green has not pled enough facts to establish that his claims are not barred by sovereign immunity. *See Tara Partners, Ltd. v. City of S. Hous.*, 282 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)

In reviewing the evidence in the light most favorable to Green, we cannot say that a material fact question about jurisdiction exists because he presented no credible evidence in support of the trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 227–28. We therefore conclude that the trial court did not err by granting the plea to the jurisdiction because Green's claims against HCIFS and Dr. Sanchez

13

are barred by sovereign immunity. We also conclude that trial court did not err by dismissing the suit against Dr. Sanchez with prejudice because claims barred by sovereign immunity must be dismissed with prejudice. *See Hampton*, 6 S.W.3d at 629.

We overrule Green's first and third issues.[7]

## Conclusion

We affirm the trial court's order granting HCIFS and Dr. Sanchez's plea to the jurisdiction and dismissing the case with prejudice. *See Crampton v. Farris*, 596 S.W.3d 267, 277 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Goss v. City of Hous.*, 391 S.W.3d 168, 177 (Tex. App.—Houston [1st Dist.] 2012, no pet.).


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

---

[7] We need not address Green's second issue—challenging dismissal of the case against HCIFS without first granting leave to amend in order to name correct defendant—because his other two issues are dispositive. *See* TEX. R. APP. P. 47.1; *Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018) ("Rule 47.1 requires only that the court of appeals address issues necessary to dispose of the appeal.").