**OAKBEND MEDICAL CENTER,**
Appellant

v.

**Domingo MARTINEZ, Jr., Individually and as Representative of the Estate of Arturo Martinez, Appellee**

NO. 14-16-00199-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed February 14, 2017.

Jason A. Gibson, Casey L. Jordan, Houston, TX, for Appellee.

Margaret Layrisson, Mark Elic Callender, Houston, TX, for Appellant.

Panel consists of Chief Justice Frost and Justices Boyce and Christopher.

## OPINION

William J. Boyce, Justice

OakBend Medical Center appeals from an order denying summary judgment based on governmental immunity from suit. The order stems from a survival and wrongful death action brought by Domingo Martinez, Jr., Individually and as Representative of the Estate of Arturo Martinez.

Arturo Martinez escaped from his bed at OakBend while undergoing psychiatric treatment. Wrist and ankle restraints were available to secure him to a bed but were not in use when he escaped. He sustained fatal injuries when he was struck by a train shortly after leaving his bed and walking out of OakBend's facility.

Survival and wrongful death claims predicated on an unrestrained psychiatric patient's escape from a hospital bed are not actionable on this record because Arturo's injuries and death did not arise from a condition or use of tangible personal or real property. Because the asserted exceptions to OakBend's governmental immunity from suit do not apply, we reverse the trial court's order and render judgment dismissing for lack of jurisdiction the claims against OakBend.

### BACKGROUND

A detailed timeline focusing on the final 36 hours of Arturo's life will assist in analyzing governmental immunity from suit for survival and wrongful death claims arising from his escape while undergoing psychiatric treatment at OakBend.

### I. Treatment at OakBend

Paramedics brought Arturo to OakBend in early December 2013 after police in Richmond, Texas found him unconscious. Arturo was admitted for treatment at OakBend's main campus, located at 1705 Jackson Street in Richmond, at approximately

10:00 p.m. on December 4. He displayed an "altered mental status" upon arrival at OakBend; he also was described as being "disoriented," "confused," "combative," and "agitated" with "decreased responsiveness." An additional notation states: "Poss[ible] Drug Abuse." Hospital records state that he had a history of schizophrenia.

Nursing notes from 10:10 p.m. on December 4 describe Arturo's level of consciousness as "Agitated Alert Awake Confused [and] Disoriented to Place/Person." He was noted to be "yelling and then laughing . . . screaming that 'you are all trying to murder me' and 'you cut off my penis.'" The notes also reflect the insertion of a catheter at that time.

Arturo pulled out his catheter at 10:46 p.m. and was "screaming and threatening to staff and security." Richmond police were "notified . . . and arrived within minutes to assist in getting [patient] . . . back on stretcher. Medication ordered. Restrained for safety [with police] . . . assist[ance]." A subsequent note says Arturo "gradually calmed somewhat." The nursing notes reflect that Arturo had been "sedated" and Richmond police were "at bedside" at 11:00 p.m. A "Restraint Order Sheet" reflects that bilateral wrist and ankle restraints were ordered for Arturo at approximately 12:30 a.m. on December 5.

Arturo "pulled off [his] wrist restraints" by 1:30 a.m. on December 5 and was "sleeping at this time with security at bedside . . . will leave unrestrained at this time." Notes from 3:16 a.m. state: "[Patient] . . . helped up out of bed to [urinate] . . . [patient] dressed in hospital gown and socks . . . remains ataxic and returned to stretcher with siderails up . . . hospital security at [patient's] . . . doorway. [Patient] . . . remains unrestrained. Presently Sleeping." The notes reflect "no change from previous assessment" until 6:40 a.m.

on December 5, when Arturo was "woken up and oriented to time and place . . . for discharge . . . ."

Following his discharge early on December 5, paramedics brought Arturo back to OakBend at 3:20 p.m. the same day. He was "agitated" and "hallucinating" when he returned, and his symptoms were "severe." A note on the "Emergency Physician Record" states that Arturo was "seen in [Emergency Department] . . . last night [with] . . . severe psychosis—Drug induced . . . ."

Nursing notes at 4:00 p.m. and 5:02 p.m. on December 5 reflect that Arturo refused to let nurses take his vital signs and there was "security at bedside." At 7:15 p.m., Arturo was sitting up in bed with "security at bedside, [patient] . . . cursing at security . . . ." At 8:28 p.m., a notation next to "Safety" lists the following: "Bed position low;" "Call system in reach;" "fall precautions;" "Siderails up." There is no notation indicating that the bed's wrist and ankle restraints were in use. Notes from 9:20 p.m. through 11:30 p.m. on December 5 reflect that security was present at Arturo's bedside or at the door to his room.

Nursing notes at 2:45 a.m. on December 6 reflect that Arturo was "awake . . . given [Gatorade] . . . to drink with assistance through straw . . . urinated [on] bed . . . cleaned . . . [patient] . . . now resting quietly with hospital security at doorway." At 3:58 a.m., Arturo was "sitting up in bed . . . attempting to leave room . . . medicated . . . and hospital security at bedside."

Following this entry, Arturo escaped from his bed and walked out of OakBend at an undetermined time during the early morning hours of December 6. Paramedics were dispatched to railroad tracks in the 1500 block of Austin Street in Richmond at approximately 5:30 a.m. on December 6. The Patient Care Report created by Fort

Bend County EMS states as follows: "Location was directly behind Oakbend on Austin St. at the railroad tracks." Paramedics found Arturo "on the ground moving around and moaning" after being hit by a train. They returned him to OakBend with severe injuries; he died in the operating room shortly after arriving.

## II. Procedural History

Arturo's father, Domingo Martinez, filed a petition predicating survival and wrongful death claims on OakBend's alleged negligence in failing to (1) exercise ordinary care while treating Arturo; (2) adequately diagnose and treat Arturo; (3) provide adequate supervision; (4) provide physical restraints; (5) properly use physical restraints; (6) provide a hospital bed with adequate restraining devices; (7) provide a hospital bed sufficient for "the established needs of the patient," and providing instead a bed that lacked an integral safety component; (8) provide "a reasonably safe and hazard-free premise for invitees;" (9) protect invitees from dangerous conditions; and (10) warn invitees of dangerous conditions.

OakBend filed a Rule 166a(c) traditional motion for summary judgment asserting its entitlement to dismissal because it is immune from suit as a "[g]overnmental unit" and no exception to governmental immunity applies under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2011). Based upon Arturo's medical records, OakBend's summary judgment motion asserted that no exception to immunity applies because his injuries and death were not proximately caused by "a condition or use of tangible

personal or real property ...." *See id.* § 101.021(2).

The summary judgment response relied on Arturo's medical records in asserting that no immunity from suit applies here because

- "Immunity is waived for death or injury caused by a condition or use, or misuse of tangible personal or real property, including premises defects;"
- "Lacking an integral safety component is considered a 'use or condition' of property;" and
- "OakBend's misuse of property and lack of integral safety components caused [Arturo] Martinez's death."

According to the response, "OakBend misused its tangible personal property by failing to properly implement a safety component of the hospital bed. Specifically, OakBend failed to properly implement available bedside restraints in the administration of [Arturo's] ... care." The response also asserted that the bed used to treat Arturo "lacked integral safety components. Specifically, without engaging the restraints or any other mechanism available to keep [Arturo] ... from voluntarily leaving the bed, the bed was defective for its intended purpose."

With respect to premises liability, the response asserted as follows: "The presence of an active railroad, directly adjacent to the hospital property, poses an unreasonable risk of harm to patients, especially mentally impaired patients .... OakBend had no safety barriers ... to prevent such patients from wandering onto the tracks and made no attempts to warn patients of the dangers posed by the train."[1]

---

1. The summary judgment response also (1) objected to OakBend's reliance upon Domingo Martinez's Chapter 74 expert reports, which OakBend attached to the summary judgment motion; and (2) requested a continuance of the summary judgment hearing to allow additional discovery. No argument is raised on appeal regarding the grant or denial

The trial court signed an order denying summary judgment, which OakBend now challenges on appeal.

## ANALYSIS

### I. Appellate Jurisdiction

■ This is an interlocutory appeal from a summary judgment order denying dismissal sought on the basis of governmental immunity from suit.

■ An order denying summary judgment is not a final judgment and ordinarily is not appealable. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). Appellate courts nonetheless have jurisdiction to consider immediate appeals of interlocutory orders when a statute explicitly provides appellate jurisdiction. *Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998); *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex. 1990).

■ This court has jurisdiction to consider an interlocutory appeal from the denial of a summary judgment motion by a "governmental unit" seeking a dismissal based on governmental immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2016); *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 319-20 (Tex. 2007) (concluding Supreme Court of Texas had jurisdiction under section 51.014(a)(8) to review the propriety of the trial court's denial of a governmental entity's summary judgment motion seeking dismissal based on immunity) (per curiam); *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) (stating that the reference to "plea to the jurisdiction" in section 51.014(a)(8) is not to a particular procedural vehicle and that an interlocutory appeal may be taken under this statute from the

denial of a summary judgment motion seeking dismissal based on lack of jurisdiction). Determining the existence of appellate jurisdiction under this provision requires us to address whether OakBend is a "governmental unit" entitled to invoke immunity from suit. The definition of a "[g]overnmental unit" includes "a political subdivision of this state, including any city . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (Vernon Supp. 2016). The definition also includes "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." *Id.* § 101.001(3)(D).

OakBend attached to its summary judgment motion sworn copies of City of Richmond ordinances that (1) established the Polly Ryon Hospital Authority to "acquire substantially all of the hospital operating assets of the Polly Ryon Memorial Hospital" pursuant to the Hospital Authority Act; and (2) later changed the authority's name to "OakBend Medical Center." *See generally* Tex. Health & Safety Code Ann. §§ 262.001 *et seq.* (Vernon 2010). In his summary judgment response, Domingo Martinez asserted in passing that "[t]here is insufficient evidence to conclude the [Texas Tort Claims Act] . . . applies to OakBend" but did not otherwise challenge OakBend's status as a governmental unit. No controverting evidence was proffered on this point in the trial court, and OakBend's status as a governmental unit is not challenged on appeal.

OakBend's uncontroverted summary judgment evidence established that it is owned by a hospital authority created by the City of Richmond and qualifies as a

---

of a continuance; therefore, we do not address that issue. We do not consider the Chapter 74 expert reports in addressing dismissal.

*See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(k) (Vernon Supp. 2016).

"governmental unit." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D); *see also Huckabay v. Irving Hosp. Auth.*, 879 S.W.2d 64, 66 (Tex. App.—Dallas 1993, writ dism'd by agr.) ("Because the hospital was created by authority granted to the City of Irving by the legislature, [the Irving Hospital Authority] is a unit of government as defined under [the Texas Tort Claims Act].").

## II. Standard of Review

■ When a governmental unit raises the affirmative defense of governmental immunity in a traditional summary judgment motion, it must establish the affirmative defense as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 552 (Tex. App.—Waco 2001, no pet.).

■ Once the movant conclusively establishes its entitlement to an affirmative defense of immunity, the burden of production shifts to the nonmovant to present evidence sufficient to create a fact issue on at least one element of either the movant's affirmative defense or an exception to that affirmative defense. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 808 (Tex. App.—Austin 2010, no pet.); *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972)). Summary judgment is proper when a suit is barred as a matter of law because of a governmental unit's immunity. *See Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) ("[A] motion for summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity."); *cf. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004) (standard of review for a jurisdictional plea based on evidence generally mirrors the traditional summary judgment standard).

## III. Governmental Immunity

■ Governmental units are not subject to suit for the torts of their agents or officers unless a constitutional or statutory waiver of immunity applies. *City of Houston v. Daniels*, 66 S.W.3d 420, 424 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). The parties' dispute here centers on the applicability of the Texas Tort Claims Act's statutory waiver of immunity from suit in certain circumstances.

The Texas Tort Claims Act grants a limited waiver of immunity from suit for "personal injury and death . . . caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

OakBend contends on appeal that section 101.021(2)'s exception to immunity from suit does not apply because Arturo's injuries and death "were not directly or proximately caused by a use or condition of real or tangible property . . ." and Oak-Bend "did not owe [Arturo] . . . a duty to prevent him from incurring injuries on an adjacent property that OakBend . . . neither owns nor occupies."

Domingo Martinez contends on appeal that OakBend subjected itself to suit under the Texas Tort Claims Act by (1) misusing tangible property when it left Arturo "unrestrained and unsupervised;" (2) using a bed that "lacked integral safety components" and was "defective for its intended purpose" because the restraints were not engaged when Arturo escaped; and (3) failing to warn Arturo and erect safety barriers to prevent him from stepping in front of an oncoming train on tracks crossing

adjacent property that OakBend did not own. .

We address these contentions in turn.

## A. Alleged Use of Tangible Property and Lack of Integral Safety Components

■ The parties do not dispute that available wrist and ankle restraints were not engaged when Arturo left his hospital bed early on December 6, walked out of OakBend's facility, and stepped into the path of a train on tracks near OakBend's property.

OakBend contends that a failure to use restraints does not constitute use of tangible property permitting suit under the Texas Tort Claims Act. "[M]ere nonuse of property does not suffice to invoke section 101.021(2)'s waiver." *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012) (citing *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994)). "If it did, governmental immunity 'would be rendered a nullity,' because '[i]t is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property.'" *Id.* (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 586 (Tex. 1996)); *see also Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 417 S.W.3d 1, 4 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

■ In certain limited circumstances, immunity is waived for claims in which the plaintiff alleges that injury or death was caused by the property's lack of an integral safety component. *See, e.g., Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 169, 171 (Tex. 1989) (patient drowned when mental health center employees took him swimming without providing a life preserver; immunity was waived because patient's epilepsy necessitated life preserver as a safety component of his swimming attire); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (immunity

waived for claim based on student athlete's knee injury after school furnished a football uniform without a knee brace); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 528-29 (Tex. 1975) (per curiam) (immunity waived where a patient receiving post-operative care fell from a hospital bed on which no safety rails had been installed).

The Supreme Court of Texas subsequently explained that "recent holdings have limited the precedential value" of *Lowe* and *Robinson. City of N. Richland Hills*, 370 S.W.3d at 372. "In *Kerrville State Hospital*, we described these cases as representing 'the outer bounds of what we have defined as use of tangible personal property.'" *Id.* (quoting *Kerrville State Hosp.*, 923 S.W.2d at 585). "'The precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries.'" *Id.* (quoting *Kerrville State Hosp.*, 923 S.W.2d at 585.). "[W]e further limited the integral safety component doctrine to cases where a safety component is completely lacking, as opposed to merely inadequate." *Id.* (citing *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005)).

We now apply these precedents in light of the petition's allegations and the summary judgment record.

The live petition alleges that OakBend left Arturo "unsupervised and unrestrained" at the time of his escape between 3:58 a.m. and 5:30 a.m. on December 6. Medical records reflect that hospital security was present at Arturo's bedside or the doorway to his room between 4:00 p.m. on December 5 and 3:58 a.m. on December 6. At 8:28 p.m., a notation in the medical records next to "Safety" lists the following:

"Bed position low;" "Call system in reach;" "fall precautions;" "Siderails up."

Restraints initially were applied after midnight on December 5. By 1:30 a.m. on December 5, Arturo had removed his wrist restraints and a determination was made to leave him unrestrained.[2] The medical records do not reflect that ankle or wrist restraints were applied to Arturo during the time that elapsed between his return to OakBend at 3:20 p.m. on December 5 and his escape between 3:58 a.m. and 5:30 a.m. on December 6. OakBend's written procedures for "Restraint: Violent Self Destructive Behavior" state as follows: "The staff will use the least restrictive non-physical restraint device whenever possible to protect the patient's health, welfare and immediate safety prior to the use of restraints while complying with agency standards and statutory regulations." Staff must evaluate the restrained patient within one hour of initiating use of restraints; this evaluation includes an assessment of "[t]he patient's reaction to the restraints" and "[t]he need to continue or terminate the restraint."

Domingo Martinez contends on appeal that the bed Arturo occupied after 3:20 p.m. on December 5 was misused because OakBend "fail[ed] ... to properly implement an available safety component of the bed. Specifically, OakBend failed to properly engage physical restraints in the administration of [Arturo's] ... care." In response to OakBend's argument that "any failure to implement safety restraints simply constitutes 'non-use' which does not waive [immunity,]" he relies heavily on *Hampton v. University of Texas—M.D. Anderson Cancer Center*, 6 S.W.3d 627, 629 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

*Hampton* addressed a post-operative patient's fall from a hospital bed equipped with side rails and an alarm. *Id.* The plaintiffs alleged that the hospital left the patient unattended while he was receiving pain medication; did not raise the side rails; and did not turn on the alarm. *Id.* The trial court granted a plea to the jurisdiction after the hospital challenged the sufficiency of the plaintiffs' jurisdictional pleadings. *Id.* at 628. The appellate court reversed and stated: "We find no significant difference in this case and those in which governmental units provided personal property lacking some integral safety component." *Id.* at 631 (citing *Robinson*, 780 S.W.2d at 169; *Lowe*, 540 S.W.2d at 299; and *Overton*, 518 S.W.2d at 529).

*Hampton's* applicability here is questionable. According to the allegations and evidence, Arturo escaped on December 6 from a bed with available ankle and wrist restraints that OakBend was not using at that time. The supreme court's later decisions in *City of North Richland Hills*, 370 S.W.3d at 372, and *Bishop*, 156 S.W.3d at 584, undercut reliance on *Hampton* to support a sweeping rule equating absence of *use* with absence of the unused *component. Cf. Overton*, 518 S.W.2d at 528-29

---

**2.** The petition alleges that "improperly applied restraints allowed [Arturo] ... to free himself, get out of the bed and rip out his IV and catheter. [Arturo,] ... who had been left unsupervised, was later found bleeding on the floor of his room." Nursing notes state that Arturo "pulled off [his] wrist restraints" by 1:30 a.m. on December 5 and was "sleeping at this time with security at bedside ... will leave unrestrained at this time." The petition's allegation regarding "improperly applied restraints" removed by Arturo refers to the first episode at OakBend between 10:00 p.m. on December 4 and his discharge early on December 5. The "improperly applied restraints" allegation does not refer to the second episode at OakBend between 3:20 p.m. on December 5 and Arturo's escape while unrestrained early on December 6, upon which the survival and wrongful death claims are predicated.

(plaintiff "alleged that the Hospital was negligent in providing him a bed not equipped with side rails;" in reviewing summary judgment evidence, court stated that "we must assume that the Hospital had a duty to install bed rails and was negligent in not doing so").

More on point is *King*, 417 S.W.3d at 6-11. *King* involved allegations that a patient undergoing chemotherapy was injured in a fall from her hospital bed after the hospital "failed to use the side rails of her hospital bed and failed to use all required restraints and mechanisms to prevent her from falling." *Id.* at 3. Evidence submitted in conjunction with the hospital's plea to the jurisdiction established that lower bedside rails were available but were not used because the nurse observing the patient "exercised medical judgment in deciding that it was appropriate to leave the lower side rails ... down." *Id.* at 9-10.

*King* distinguished *Overton* and *Hampton* because "there is no indication ... that the records in those cases contained jurisdictional evidence establishing that a health-care provider assessed the risks to the patient and determined that it was appropriate to raise some rails and not others." *Id.* at 7. *King* also distinguished *Hampton* because it "concerned only challenges to the sufficiency of the plaintiffs' pleadings, not a challenge to the jurisdictional evidence." *Id. King* concluded that the trial court erred in denying the hospital's plea to the jurisdiction "because this should not be considered as a complaint about the use of tangible personal property for which ... immunity is waived, but should instead be treated as a complaint about the exercise of medical judgment for which immunity is not waived ...." *Id.* at 11.

Here, as in *King*, the claims against OakBend target an exercise of medical judgment to (1) "leave [Arturo] unre-strained" after 1:30 a.m. on December 5 while hospital security was present; and (2) continue relying on safety measures other than restraints while hospital security was present after 3:20 p.m. on December 5. Here, as in *King*, the claims at issue are not predicated on use of tangible personal property or the bed's lack of an integral safety component. *See id.* at 11; *see also Dallas Cty. Mental Health & Mental Retardation Ctr. v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) ("The real substance of plaintiffs' complaint is that [the patient's] death was caused, not by the condition or use of property, but by the failure of [the treatment center] to restrain him once they learned he was still suicidal. The Tort Claims Act does not waive ... immunity from such a complaint.").

Therefore, use of tangible personal property cannot be invoked on this record as a basis for waiver of OakBend's immunity from suit under section 101.021(2).

**B. Alleged Premises Defect**

■ Domingo Martinez also invokes premises liability principles in asserting that OakBend is subject to suit in connection with his son's death. The operative statutory provision states as follows: "[I]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a) (Vernon 2011).

OakBend contends that it owed no duty to insure the safety of Arturo with respect to an injury sustained on property it did not own. OakBend asserts that "it does not own, occupy, or otherwise control the real property on which the railroad track is located." OakBend also argues as follows: "Because [Arturo] ... left OakBend['s] ... premises[,] he ceased to be an invitee

and OakBend ... had no legal duty to protect or warn him of dangers that were not on property owned or controlled by OakBend .... Accordingly, OakBend ... is immune from suit because there was no premises defect on OakBend['s] property that proximately caused [Arturo's] ... injuries."

Domingo Martinez responds as follows: "If a possessor has actual knowledge of a dangerous condition on its property, it has the duty to warn of the dangerous condition or make it reasonably safe regardless of the injured party's status."

We measure these arguments against settled duty standards. "An owner or occupier of land has a duty to use reasonable care to protect an invitee from conditions that create an unreasonable risk of harm of which the owner or occupier knows or by the exercise of reasonable care would discover." *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000)). An invitee enters another's land with the owner's knowledge and for the mutual benefit of both. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975).

An owner or occupier of land owes a duty not to injure a licensee willfully, wantonly, or through gross negligence; further, an owner or occupier who has actual knowledge of a dangerous condition unknown to the licensee must warn of or make safe the dangerous condition. *Ruvalcaba*, 64 S.W.3d at 134 (citing *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 563 (Tex. 1976)). "A licensee enters and remains on the land with the owner's consent and for his own convenience or on business with someone other than the owner." *Id.* (citing *Cowart v. Meeks*, 131 Tex. 36, 111 S.W.2d 1105, 1107 (1938)).

The circumstances here make it unnecessary to determine Arturo's precise status to address the existence of a duty. The dispositive and undisputed circumstances here demonstrate that Arturo was struck by a train on tracks that were not located on OakBend's premises. "The duty of a premises owner or occupier to provide protection arises from control of the premises; the duty does not extend beyond the limits of the premises owner's control." *Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760, 763 (Tex. App.—Houston [1st Dist.] 1994, no writ). As a general principle, "an owner or occupier of property has no duty to insure the safety of persons who leave the owner's property and suffer injury on adjacent highways or railroad tracks, or to insure safety against the dangerous acts of third persons." *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 706 (Tex. App.—Fort Worth 1998, pet. denied) (citing *Dixon*, 874 S.W.2d at 762-63; *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 192 (Tex. App.—San Antonio 1988, writ denied); and *Portillo v. Hous. Auth.*, 652 S.W.2d 568, 569 (Tex. App.—El Paso 1983, no writ)); *see also Guereque v. Thompson*, 953 S.W.2d 458, 466 (Tex. App.—El Paso 1997, pet. denied).

Domingo Martinez responds by invoking an exception to the general rule, which he characterizes as follows: "Where an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the landowner's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger." In support of this proposition he cites *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 615 (1950), which involved an injury occurring on a hidden step in the common doorway that connected a parking garage with a

building entrance; and *Parking, Inc. v. Dalrymple*, 375 S.W.2d 758, 762 (Tex. Civ. App.—San Antonio 1964, no writ), which involved an injury occurring when a theater patron fell into a creek running under a footbridge while attempting to walk to the theater entrance from a parking lot across the street.

We need not address this exception's reach or attempt to fit it within the general rule linking a premises owner's duty to control of the property on which injury occurs. Once OakBend established a basis for immunity from suit, the burden of production shifted to the nonmovant to present evidence sufficient to create a fact issue on at least one element of an exception to that affirmative defense. *See Zeifman*, 322 S.W.3d at 808; *Palmer*, 728 S.W.2d at 435. The live petition alleges that trains operate "adjacent to [Oak-Bend's] ... southwest border" and "less than 400 feet from the [OakBend's] ... entrance" but does not allege that the tracks are obscured. There is no pleading or summary judgment evidence that the tracks run in front of OakBend's entrance and are obscured. Whatever the reach of an exception addressing an obscured hazard at a property's entrance, this exception does not encompass the circumstances here to create a duty on the part of Oak-Bend with respect to Arturo's injuries and death on property OakBend did not own or control. *See Portillo*, 652 S.W.2d at 568-69 (property owner owed no duty in connection with injury that occurred when child climbed fence and was injured by train on adjacent property).

### CONCLUSION

We reverse the trial court's order denying summary judgment and render judgment dismissing for lack of jurisdiction the claims asserted against OakBend by Dom-

ingo Martinez, individually and as representative of the estate of Arturo Martinez.