**Opinion issued July 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00794-CV**

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**CYNTHIA RIOS, INDIVIDUALLY AND A/N/F OF A.R., V.R., AND R.R., MINORS, Appellee**

———

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-05981**

———

**MEMORANDUM OPINION**

In this interlocutory appeal,[1] appellant, City of Houston (the "City"),

challenges the trial court's order denying its summary-judgment motion filed in the

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *see also Thomas v. Long*,
       207 S.W.3d 334, 338–40 (Tex. 2006) (summary-judgment motion challenging trial

suit of appellee, Cynthia Rios, individually and as next friend of A.R., V.R., and R.R., minors, against the City for negligence. In its sole issue, the City contends that the trial court lacks subject-matter jurisdiction over Rios's suit.

We affirm.

## Background

In her petition, Rios alleged that on August 24, 2022, she was involved in a car collision near the 5000 block of Telephone Road in Harris County, Texas. According to Rios, she was driving her sports utility vehicle ("SUV"), in which her three minor children, A.R., V.R., and R.R., were passengers, when "[s]uddenly and without warning," Anita George, an employee of the City, "failed to yield the right of way while exiting a private driveway," striking Rios's SUV. At the time of the collision, George was "operating a motor vehicle []in the general course and scope of [her] employment for [the City]." As a result of the collision, Rios sustained personal injuries.

Rios brought a claim against the City for negligence, alleging that George, a City employee, operated the City's truck in a negligent manner by:

court's subject-matter jurisdiction is subsumed under Texas Civil Practice and Remedies Code section 54.014(a)(8)); *City of Houston v. Garza*, No. 01-18-01069-CV, 2019 WL 2932851, at *3 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.) ("When a governmental unit asserts immunity in a motion for summary judgment, a court of appeals has jurisdiction to review an interlocutory order denying summary judgment.").

2

- "Failing to maintain a proper lookout";

- "Failing to control the distance between her [truck] and surrounding vehicles";

- "Failing to maintain attention";

- "Failing to timely apply brakes";

- "Failing to yield the right-of-way";

- "Failing to control the speed of her [truck]"; and

- "Failing to maneuver [her truck] so as to avoid a collision."

(Emphasis omitted.) Rios alleged that George was negligent in the general course and scope of her duties as an employee of the City and George's negligence was the proximate cause of Rios's injuries. Rios sought damages.

The City answered, generally denying the allegations in Rios's petition, and asserting, among other things, that it was entitled to governmental immunity and the Texas Tort Claims Act ("TTCA") did not waive immunity for Rios's claim against it.[2]

The City then moved for summary judgment on Rios's negligence claim, arguing that it was entitled to judgment as a matter of law because the trial court lacked subject-matter jurisdiction over Rios's suit. The City asserted that it was entitled to governmental immunity and Rios could not show that her suit against the

---

[2]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109.

City fell under the limited waiver of governmental immunity provided by the TTCA.[3] According to the City, the TTCA only waived governmental immunity for personal injuries proximately caused by the negligence of a City employee, if the personal injuries arose from the operation or use of a motor vehicle and the City employee was acting in the scope of her employment.[4] And in this case, George was not acting in the scope of her employment with the City when the collision with Rios's SUV occurred.[5]

The City attached to its summary-judgment motion the affidavit of George. In her affidavit, George testified that she was previously employed by the City and worked as a Field Technician with Transportation & Drainage Operation, a department within Houston Public Works. George was employed by the City for six years, and her employment ended in October 2022. As to her job duties as a Field Technician, George stated that she "operated overlay/paving machines, inputted information into a work order, led the work crew, drove vehicles to and from various work sites," and performed "other duties as assigned." She would "clock[]-in" at 6:00 a.m. at the Houston Public Works headquarters at 5500 McCarty Road, and after clocking-in, she would go to her work site.

---

[3]    *See id.* § 101.021(1).

[4]    *See id.*

[5]    The City also asserted that Rios could not establish that her injuries arose from George's operation or use of a motor vehicle.

4

George further testified that on August 24, 2022, she was driving a City truck, and another City employee, George Washington, was a passenger in her truck. She and Washington "normally did work projects together[,] and [they] traveled together to those work sites." On the morning of August 24, 2022, George was "on the way to a work [site] off of Telephone Road, near Bellfort Street" with Washington. They had not yet been to the work site that morning and were on the way to the work site when George "stop[ped] for [a] personal break." According to George, she and Washington could not begin work at the work site until "the remainder of the crew was present" and asphalt was delivered to the site; she and Washington could not do any "work" by themselves at the work site, and they could not "perform job duties related to the [work] at [the] Telephone Road/Bellfort" work site while driving there.

As to her "personal break," George testified that while driving to the work site, she told Washington that she needed "to make a personal stop to use the restroom."[6] So, "[b]efore 7:00 a.m.," they stopped at Frank's Grill restaurant, located at 5100 Telephone Road, "to use the restroom." The stop lasted about ten minutes. After getting back in the truck, George exited the parking lot "to try to return to [her] route to the work site."

---

[6]   George explained that while working, the City permitted George to take a break at 9:15 a.m. and 2:15 p.m. But George could also take breaks at any time for personal reasons at her discretion. The stop at Frank's Grill was "not [at] one of the City['s] . . . designated times for a break."

Upon exiting the restaurant's parking lot, George pulled her truck "into the []/center turn[ing] lane" on Telephone Road and stopped. While stopped, she looked "to make sure [that the] southbound Telephone Road traffic was clear." In the meantime, Rios "drove [her SUV] onto Telephone Road," toward "the []/center [turning] lane where [George's truck] was located" and approached the truck from the left. Washington saw Rios and told George that Rios "was not looking in [their] direction" and to "watch out." George's truck, which was still stopped, was then struck by Rios's SUV.

The City also attached to its summary-judgment motion the affidavit of Washington. In his affidavit, Washington testified that he had been an employee of the City for twenty years. He was a Semi-Skilled Laborer with Transportation & Drainage Operation, a department within Houston Public Works. As to his job duties, Washington stated that he "la[id] asphalt in neighborhoods." While asphalt was being poured, Washington controlled traffic, raked and spread asphalt, and alerted "people in the neighborhoods what [the workers] were doing and how long [they] w[ould] be there pouring asphalt." Washington would "clock-in" at 6:00 a.m. at the Houston Public Works headquarters at 5500 McCarty Road and then would leave to go to his work site.

Washington further testified that on August 24, 2022, he was a passenger in a City truck driven by George. He and George normally did work projects together,

6

and they traveled together to work sites. That day, he and George were heading to a work site located off Telephone Road, near Bellfort Street. They had not been to the work site yet that morning, and they were driving to the work site before they made a stop for George. Washington explained that work could not begin at the work site that day until asphalt was delivered and all the crew was present, including him and George. The crew was made up of about twelve to fifteen people. Neither he nor George could perform any work at the work site alone. While driving to the work site, he and George were unable to perform any job duties related to their project at the work site.

According to Washington, while driving to the work site, George told Washington that she "needed to make a personal stop to use the restroom."[7] Before 7:00 a.m., they stopped at Frank's Grill, located at 5100 Telephone Road, to use the restroom. Washington and George were stopped at Frank's Grill for about ten minutes. When they got back in the truck, George exited the parking lot "to try to return to [their] route to the work site."

Washington further explained that when George pulled out of the parking lot, she turned into the center turning lane of Telephone Road and stopped "to make sure the rest of traffic was clear." Rios then turned onto Telephone Road and drove

---

[7] Washington testified that while working, the City permitted George and Washington to take breaks at 9:15 a.m. and 2:15 p.m. But Washington and George could also take a break at any time for personal reasons at their discretion.

7

"toward the [center turning lane] where [George's truck] was located," approaching George's truck from the left side. Washington saw that Rios was not looking in the direction of George's truck, and he told George to "watch out for her." Rios then struck the front bumper of George's truck, which was still completely stopped.

In her response to the City's summary-judgment motion, Rios argued that the City did not establish that it was entitled to judgment as a matter of law on her negligence claim because the TTCA waived the City's governmental immunity, and the trial court did not lack subject-matter jurisdiction. Rios noted that the City, in its summary-judgment motion, did not dispute that George was a City employee and that George was involved in a collision wherein Rios was injured. Further, the undisputed evidence showed that, at the time of the collision, George was driving a City-owned truck and performing her work duties during work hours. Rios argued that "[t]he fact that [George had] purportedly . . . stopped to use the restroom prior to the collision [was] of no import" because George was "on the job at the time," "was in the middle of the street," and was "on her route to" her work site when the collision occurred. (Internal quotations omitted.)

Rios attached to her response to the summary-judgment motion a copy of a Texas Peace Officer's Crash Report (the "Crash Report") related to the collision. It stated that George's truck emerged from a driveway at a business strip center on Telephone Road. The truck "cleared" oncoming traffic traveling northbound on

8

Telephone Road and stopped in the center turning lane on Telephone Road to make a left turn. Rios's SUV was at a stop sign at 7200 Winfree Street. The SUV "cleared" southbound traffic on Telephone Road and stopped in the center turning lane on Telephone Road. George's truck and Rios's SUV "met in" the center turning lane and struck each other. No one was injured. The Crash Report noted that Rios had "fail[ed] to yield [the right of way] making a left turn at an intersection" and that George had "fail[ed] to yield [the right of way] emerging from a driveway[]." Rios also attached copies of four photographs of her SUV and George's truck after the collision. The photographs show both the truck and the SUV with front-end damage.

In its reply to Rios's response, the City asserted that the TTCA only waived the City's governmental immunity if, at the time of the collision, George was acting in the scope of her employment, and in this case, George had "stray[ed] from [her] path of duty to perform a personal errand"—taking a restroom break. The City also noted that generally, an employee is not considered to be acting in the scope of her employment if she is driving to and from work, even if she is driving her employer's car and is on-call. According to the City, George's duties as a Field Technician for the City included "operating the overlay/paving machines, inputting information into a work order, leading the work crew, and driving vehicles to and from various work sites." And George was not performing her duties "when she stopped at Frank's Grill to use the restroom." Further, even though she was "on [her] way to

9

[the] work site" after using the restroom, her "diversion" from her "duties to use the restroom remove[d] [her] from th[e] scope of employment."[8]

The trial court denied the City's summary-judgment motion.

## Standard of Review

Subject-matter jurisdiction is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Several different procedural vehicles may be used to challenge a trial court's subject-matter jurisdiction. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Amboree v. Bonton*, 575 S.W.3d 38, 42–43 (Tex. App.—Houston [1st Dist.] 2019, no pet.). A governmental unit may raise the affirmative defense of governmental immunity and challenge the trial court's jurisdiction through a summary-judgment motion. *Clark*, 544 S.W.3d at 770. We review a trial court's ruling on a summary-judgment motion de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Jersey Village v. Killough*, No. 01-20-00823-CV, 2021 WL 5903988, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 14, 2021, no pet.) (mem. op.).

---

[8] The City also asserted that Rios had failed to establish that her injuries arose from George's operation and use of a motor vehicle because George's truck was "stopped" in the center turning lane on Telephone Road at the time of the collision.

10

To prevail on a summary-judgment motion, the movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a governmental unit, as the movant, raises the affirmative defense of governmental immunity and challenges the trial court's subject-matter jurisdiction in a summary-judgment motion, it must establish that it is entitled to governmental immunity as a matter of law. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *3 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 542 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Once the governmental unit conclusively establishes its entitlement to governmental immunity, the burden shifts to the non-movant to present evidence sufficient to create a fact issue on at least one element of either the affirmative defense or an exception to that defense. *Oakbend*, 515 S.W.3d at 542; *Zeifman v. Nowlin*, 322 S.W.3d 804, 808 (Tex. App.—Austin 2010, no pet.). If the non-movant cannot meet her burden, the suit is barred because of governmental immunity, and summary judgment is proper. *Oakbend*, 515 S.W.3d at 542; *see also Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) ("[A] motion for summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity.").

11

**Governmental Immunity**

In its sole issue, the City argues that the trial court erred in denying its summary-judgment motion because the trial court lacks subject-matter jurisdiction over Rios's suit. The City asserts that it is entitled to governmental immunity, and the TTCA only waives its immunity for personal injuries proximately caused by the negligence of a governmental employee acting in the scope of her employment, if the injuries arise from the operation or use of a motor-driven vehicle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). And according to the City, George, the governmental employee here, was not acting in the scope of her employment at the time of the car collision.

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24. Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24; *see also Odutayo v. City of Houston*, No.

12

01-12-00132-CV, 2013 WL 1718334, at *2 n.8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.). We interpret statutory waivers of sovereign immunity and governmental immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous. *See LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.034. Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004); *see also Harris Cnty. v. S. Cnty. Mut. Ins. Co.*, No. 01-13-00870-CV, 2014 WL 4219472, at *2 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.) ("Governmental immunity from suit deprives a trial court of subject-matter jurisdiction.").

The TTCA provides a limited waiver of immunity for certain suits against governmental units. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109; *Garcia*, 253 S.W.3d at 655; *City of Dallas v. Hillis*, 308 S.W.3d 526, 530 (Tex. App.—Dallas 2010, pet. denied). The City is a governmental unit protected by governmental immunity, absent waiver. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *6 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem.

13

op.).  Relevant here, the TTCA waives a governmental unit's immunity for personal injuries proximately caused by the negligence of a governmental unit's employee, acting in the scope of her employment, if the injuries arise from the operation or use of a motor-driven vehicle.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1); *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 (Tex. 2022); *Hinojosa v. Metro. Transit Auth. of Harris Cnty.*, No. 01-17-00824-CV, 2018 WL 4131890, at *2 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 488 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Rios has alleged that she sustained personal injuries as a result of the negligence of George—a governmental employee acting in the scope of her employment with the City—and Rios's injuries arose from the operation or use of a motor-driven vehicle.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).  The City, on the other hand, asserts that George was not acting in the scope of her employment at the time Rios was injured.

> For purposes of the TTCA, an "[e]mployee" is
>
> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

14

*See id.* § 101.001(2) (internal quotations omitted). And an employee's "[s]cope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id.* § 101.001(5) (internal quotations omitted). "In general, whether a person is acting within the scope of h[er] employment depends on whether the general act from which an injury arose was in furtherance of the employer's business and for the accomplishment of the objective for which the employee was employed." *Lara v. City of Hempstead*, No. 01-15-00987-CV, 2016 WL 3964794, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2016, pet. denied) (internal quotations omitted).

In car-collision cases, when a vehicle involved in a collision is owned by the driver's employer, a presumption arises that the driver was acting in the course and scope of her employment when the collision occurred. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971); *Carrizales*, 2021 WL 3556216, at *4; *Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at *4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.). But if there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of her employer's business, the presumption vanishes. *See Carrizales*, 2021 WL 3556216, at *4; *Mejia-Rosa v. John Moore Servs.*, No. 01-17-00955-CV, 2019 WL 3330972, at *7 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.)

15

(mem. op.); *see also Molina*, 2018 WL 3977945, at *5; *Lara*, 2016 WL 3964794, at *4 (explaining presumption is only procedural tool and once rebutted, it disappears from case). If the employer proffers evidence rebutting the presumption, the burden shifts back to the plaintiff to produce other evidence that the driver was acting in the scope of her employment at the time of the collision. *Robertson Tank Lines*, 468 S.W.2d at 358; *Carrizales*, 2021 WL 3556216, at *4; *Molina*, 2018 WL 3977945, at *4.

Here, it is undisputed that George, a City employee, was driving a City-owned truck when the collision with Rio's SUV occurred. That evidence raised the presumption that George was acting in the scope of her employment at the time of the collision. The City, however, asserts that it offered evidence rebutting the presumption through the affidavits of George and Washington.

In her affidavit, George testified that on August 24, 2022, she was employed as a Field Technician with Transportation & Drainage Operation, a department within Houston Public Works. Her job duties as a Field Technician included "operat[ing] overlay/paving machines, input[ting] information into a work order, le[ading] the work crew, dr[iving] vehicles to and from various work sites," and performing "other duties as assigned." Each day George would "clock[]-in" at 6:00 a.m. at Houston Public Work headquarters at 5500 McCarty Road and then leave to go to her work site.

16

On the morning of August 24, 2022, George was driving a City-owned truck to a work site, which was off Telephone Road, near Bellfort Street. Washington was a passenger in the truck. George and Washington "normally did work projects together[,] and [they] traveled together to those work sites." They had not been to the work site that morning but were on their way to the work site when George stopped at Frank's Grill, located at 5100 Telephone Road, to use the restroom. George and Washington were stopped for about ten minutes before they returned to the truck. After getting back in the truck, George exited the parking lot "to try to return to [her] route to the work site."

Upon exiting the restaurant's parking lot, George pulled the truck into the center turning lane on Telephone Road and stopped. While stopped, she looked "to make sure [that the] southbound Telephone Road traffic was clear." In the meantime, Rios "drove [her SUV] onto Telephone Road" toward the center turning lane where George's truck was stopped. George's truck was then struck by Rios's SUV.

Washington, in his affidavit, testified that on August 24, 2022, he was employed as a Semi-Skilled Laborer with Transportation & Drainage Operation, a department within Houston Public Works. Like George, Washington would "clock-in" at 6:00 a.m. at Houston Public Works headquarters at 5500 McCarty Road before leaving to go to his work site.

17

According to Washington, on the morning of August 24, 2022, he was a passenger in a City-owned truck driven by George. He and George did work projects together, and they traveled together to work sites. On that day, he and George were heading to a work site located off Telephone Road, near Bellfort Street. They had not been to the work site yet that morning, and they were driving to the work site before they made a stop.

Washington explained that while driving to the work site, George told him that she needed to "stop to use the restroom." So, they stopped at Frank's Grill, located at 5100 Telephone Road, to use the restroom. The stop lasted about ten minutes, and when they got back in the truck, George exited the restaurant's parking lot onto Telephone Road.

According to Washington, when George pulled out of the parking lot, she turned her truck into the center turning lane and stopped "to make sure the rest of traffic was clear." Rios turned her SUV onto Telephone Road and drove "toward the [center turning lane] where [George's truck] was located." Rios then struck the front bumper of George's truck, which was completely stopped on Telephone Road.

The City asserts that the above testimony demonstrated that George was on a "personal errand" at the time of the collision with Rios's SUV and this rebutted the presumption that George was acting in the scope of her employment at the time of the collision. In doing so, the City relies on several cases which have held that

governmental employees are not acting in the scope of their employment when using employer-owned vehicles to travel to or from work, lunch, or on a personal errand. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–57 (Tex. 2007); *Robertson Tank Lines*, 468 S.W.2d at 356–61; *Carrizales*, 2021 WL 3556216, at *4–6; *Molina*, 2018 WL 3977945, at *4–6 (City produced evidence showing City employee "was in the process of returning to work" and "had not resumed [his] duties" when he struck plaintiff while driving City-owned truck; evidence showed City employee was merely "in the process of returning to work").[9]

For instance, in *Carrizales*, a case previously before this Court, it was undisputed that a City employee was driving a City-owned sewer jet truck when a collision with the plaintiff's car occurred. *See Carrizales*, 2021 WL 3556216, at *5. As we explained in our opinion, in that case, the plaintiff brought a negligence claim against the City after the car collision.[10] *See id.* at *1. The evidence raised a presumption that the City employee was acting in the course and scope of her

---

[9]   We note that the City cited additional cases in its briefing.

[10]   In *City of Houston v. Carrizales*, the City moved for summary judgment on the plaintiff's negligence claim, arguing that it was entitled to judgment as a matter of law because the trial court lacked subject-matter jurisdiction over the plaintiff's suit. No. 01-20-00699-CV, 2021 WL 3556216, at *1–2 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.). The City asserted that it was entitled to governmental immunity and the plaintiff could not show that his suit against the City fell under the limited waiver of governmental immunity provided by the TTCA. *Id.* at *2. According to the City, this was because at the time of collision, the City employee was acting outside of her scope of employment. *Id.*

employment at the time of the collision because the employee was driving a City truck. *See id.* at *5. However, the City, in moving for summary judgment on the plaintiff's negligence claim, adduced testimony from the City employee which rebutted the presumption that the employee was acting in the scope of her employment. *See id.*

More specifically, the City attached portions of the City employee's deposition testimony to its summary-judgment motion, in which the employee testified that she was a utility worker, with job duties involving "investigat[ing] stoppages," "investigat[ing] and inspect[ing] sewer complaints," and otherwise responding to public requests for service. *Id.* at *2 (alterations in original). She had to perform all her job duties with another employee present because it "t[ook] two people to perform the job." *Id.* The City employee also testified that when the collision with the plaintiff's car occurred, she was alone in the City-owned sewer jet truck and driving back to her place of work after stopping by her home for lunch. *Id.*; *see also City of Houston v. Flores-Garcia*, No. 14-21-00680-CV, 2023 WL 4196541, at *3 (Tex. App.—Houston [14th Dist.] June 27, 2023, no pet.) (mem. op.) (explaining evidence rebutting presumption in *Carrizales* showed: (1) City employee was driving jet sewer truck back to work after going to her home for lunch and (2) her work with truck required two people and she was alone in truck at time of collision).

20

Notably, the plaintiff in *Carrizales* did not controvert the testimony of the City employee and did not produce other evidence that the City employee was acting in the course and scope of her employment at the time of the collision. *Carrizales*, 2021 WL 3556216, at *5–6. Thus, because the uncontroverted evidence established that the City employee was not acting in the scope of her employment with the City at the time the collision with the plaintiff's car occurred, we held that the City's governmental immunity was not waived under the TTCA. *Id.* at *4–6.

Unlike the cases cited by the City in its briefing, however, here, the City's evidence showed that George's regular work duties included "dr[iving] vehicles to and from various work sites" and she normally performed her work duties with Washington, who was present in the truck at the time of the collision with Rios's SUV. George also testified that she was driving to a work site near Telephone Road, after clocking-in that morning, and her truck was on Telephone Road when the collision with Rios's SUV occurred.

We find this case resembles a case recently decided by the Fourteenth Court of Appeals. In *Flores-Garcia*, a City employee was driving a City-owned vehicle when he "ran a stop sign at an intersection" and struck the plaintiff's car. 2023 WL 4196541, at *1. The plaintiff then sued the City for negligence, and the City moved for summary judgment, asserting that the trial court lacked subject-matter jurisdiction because the City's governmental immunity could not be waived under

21

the TTCA. *Id.* Specifically, the City asserted that its employee was not acting in the scope of his employment at the time of the collision. *Id.* The trial court denied the City's motion, and the City appealed. *Id.*

On appeal, our sister appellate court similarly noted that when a vehicle involved in a collision is owned by the driver's employer, a presumption arises that the driver was acting in the scope of employment at the time the collision occurred. *Id.* at *2. But when a driver is on a personal errand at the time of the collision that presumption is rebutted. *Id.* (citing *Carrizales*, 2021 WL 355216, at *4).

To rebut the presumption that the City employee was acting in the scope of his employment at the time of the collision with the plaintiff's car, the City offered the employee's affidavit, in which the employee testified that he had just left a convenience store located next to the intersection where the collision occurred. *Id.* at *3. The employee stated that he did not remember why he had stopped at the convenience store, but it was not to complete any of his job duties. *Id.* The employee also testified that he did not know where he was going at the time of the collision, but his primary workplace, a small office, was very close to the intersection where the collision occurred. *Id.* According to the City, that evidence demonstrated that its employee had deviated from the City's business and thus was not acting in the scope of his employment at the time of the collision with the plaintiff's car. *Id.*

Although the City, in its briefing, directed the Fourteenth Court of Appeals to Texas cases determining that a City employee was not acting in the scope of his employment when he was traveling to or from work, lunch, or on a personal errand, our sister appellate court noted that in the case before it, the City employee's regular work duties included "driving to investigate water complaints in a City-owned vehicle" and that the City was essentially asking the court of appeals to "infer," without evidence, that the City employee's "deviation from his duties was on-going after he left the convenience store." *Id.* at *3–4. Ultimately, the court of appeals held that the City's summary-judgment evidence did not conclusively establish that at the time of the collision with the plaintiff's car, the City employee was on a personal errand and had not resumed his job duties. *Id.* at *4. Thus, the City had not rebutted the presumption that the City employee, driving a City-owned truck, was acting in the scope of his employment.

As in *Flores-Garcia*, we note that George and Washington both testified in their affidavits that while on the way to the work site, George stopped at Frank's Grill to use the restroom. However, the collision occurred after George's restroom break was complete and her truck was back on the road and proceeding to the work site. Notably, "dr[iving] vehicles to and from various work sites" was part of George's work duties, which she normally performed with Washington, who was present in the City-owned truck at the time of the collision with Rios's SUV. *Cf.*

23

*City of Houston v. Fisher*, No. 14-21-00573-CV, 2023 WL 2322971, at \*5 (Tex. App.—Houston [14th Dist.] Mar. 2, 2023, pet. denied) (mem. op.) (City did not provide evidence its employee had not resumed work duties, where employee had left restaurant after lunch, was driving City-owned car, and his "regular duties involv[ed] [the] operation of" City-owned car (second alteration in original) (internal quotations omitted)); *see also Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 135–38 (Tex. 2018) (explaining employee acting in scope of employment when driving to bunkhouse when his work duties included "provid[ing] crew transportation to and from drilling site"). Here, the City's summary-judgment evidence did not establish that George's restroom-break deviation was on-going after she left Frank's Grill.

Accordingly, we conclude that the City failed to overcome the presumption that George, a City employee, driving a City-owned truck, was acting in the scope of her employment at the time the collision with Rios's SUV occurred. *Cf. Flores-Garcia*, 2023 WL 4196541, at \*3–4; *Fisher*, 2023 WL 2322971, at \*5; *see also City of Houston v. Arellano*, 654 S.W.3d 483, 486 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) ("The presumption prevails when it is unrefuted."). And because the City did not conclusively establish that George was not acting in the scope of her employment at the time of the collision with Rios's SUV, we hold that the trial court did not err in denying the City's summary-judgment motion.

We overrule the City's sole issue.

## Conclusion

We affirm the order of the trial court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

25